**Dorothy M. AUSTIN, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–130.

United States Court of Veterans Appeals.

Argued May 18, 1994.

Decided July 7, 1994.

As Amended Aug. 17, 1994.

Dewey L. Crepeau, Columbia, MO, for appellant.

Rosalind E. Masciola, with whom Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, Washington, DC, were on the pleadings, for appellee.

Ronald L. Smith, Washington, DC, filed a brief and presented oral argument for the Disabled American Veterans as amicus curiae.

William H. Fraser and John M. Keegan, Advocates for Basic Legal Equality, Inc., Toledo, OH, filed a brief for Elgin M. Hudson as amicus curiae.

Sean A. Kendall (argued) and Keith D. Snyder, Washington, DC, filed a brief for the National Organization of Veterans' Advocates as amicus curiae.

Robert L. Nelson and Michael P. Horan (argued), Paralyzed Veterans of America, and George T. Estry, Veterans of Foreign Wars, Washington, DC, filed a memorandum of law as amici curiae.

Before KRAMER, IVERS, and STEINBERG, Judges.

KRAMER, Judge:

Appellant, Dorothy M. Austin, appeals the January 12, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for the cause of her husband's death. This Court has jurisdiction under 38 U.S.C. § 7252(a). For the reasons set forth below, the Court vacates the January 12, 1993, BVA decision and remands the matter for proceedings consistent with this opinion.

## I. Background

Appellant's husband was a veteran of World War II. R. at 108. During service in 1944, the veteran sustained injuries to, inter alia, his left chest and abdomen when he was crushed between two railroad cars. R. at 20, 27–98, 100–05. Effective on the day following his discharge, January 3, 1946, the veteran was service connected at 10% by a VA regional office (RO) for, inter alia, "fractures, eighth, ninth[,] and tenth ribs, left, with trauma and hemothorax and thickening of pleura, with pain and discomfort on rapid breathing, mod[erate]." R. at 109.

In 1983, in support of his claim for a higher rating, the veteran submitted a report from his private physician, Dr. Quaranto, which contained diagnoses of "chronic obstructive pulmonary emphysema [and] pulmonary fibrosis," and stated that a chest x-ray of March 15, 1982, "shows hyperexpansion compatible with emphysema[;] also has severe fibrosis ... l[ef]t lung [secondary] to trauma [and] scarring due to thoracotomy done in 1944 to drain hematoma...." R. at 126. A VA examination subsequently conducted included a radiographic report of the chest which "reveal[ed] fibrosis at the left base and the left lower chest[;] ... no active lung disease.... The aorta is calcified." R. at 134. The RO denied the veteran's claim. R. at 136.

In 1990, the veteran again filed a claim for an increased rating which was denied by the RO. R. at 140. Although the veteran formally disagreed with the denial, he died shortly thereafter from "[a]cute respiratory failure due to ... [p]ulmonary emphysema." R. at 204. Following his death, the veteran's wife, appellant here, filed an application for dependency and indemnity compensation. R. at 208. In support of her contention that the "veteran's service connected pleural thickening and poor diaphragmatic function impeded treatment to the extent that it materially contributed to his death," R. at 220, appellant submitted another statement from Dr. Quaranto which opined that "poor diaphragmatic function helped to contribute to [the veteran's] death and therefore I feel that in some ways that his problems were related to his injury that he obtained during his

service in WWII and was service connected." R. at 218. The RO denied appellant's claim in August 1991, in February 1992, and again in June 1992. R. at 210, 222, 232.

On June 24, 1991, the BVA Chairman issued Memorandum No. 01–91–21. The Memorandum recognized that the then current provision with respect to the use of Board medical adviser opinions, located in the BVA Manual, MBVA–1 (Appellate Procedure for Professional Services), Part II, para. 7.21, did not afford appellants the rights of notice and comment, and precluded the incorporation of such opinions into a BVA decision. The Memorandum acknowledged the need to make the BVA's practice "compatible with the Board's current statutory responsibilities, as interpreted by [this Court], to clearly set forth the 'reasons or bases' for its decisions ... and its responsibility to decide appeals 'on the entire record in the proceeding and upon consideration of all evidence and material of record....'" As relevant here, the Memorandum set forth the following procedure:

a. *All* opinions obtained from any physician at the Board (whether a Board Member from another Section of the Board or a Board Medical Advisor) in regard to an appeal before the Board will be reduced to writing ... and will be added to the claims folder or other applicable [VA] records folder.

. . . .

c. The same notice and comment procedures provided in current Rule of Practice [903 (38 C.F.R. § 20.903 (1993)) ] for other types of opinions used in disposing of appeals will be used with respect to ... opinions obtained from physicians at the Board.

. . . .

e. These instructions are effective immediately and supersede all contrary instructions in MBVA–1 or any other instructions previously issued. They will be applied to all appeals received by the Board in the future and to all currently pending appeals in which decisions have not yet been dispatched.

While appellant's claim was pending on appeal before the BVA, the record indicates that a Board medical adviser opinion was requested in October 1992 from Dr. Jack Rheingold, apparently on behalf of a Board member, *see* R. at 235. Dr. Rheingold was requested to render an opinion on the following question:

[The] [v]et[eran] died in 1991 as a result of pulmonary emphysema.... *Clearly, his inservice chest injury was not related to his fatal pulmonary emphysema.* Howsoever, his treating physician opines otherwise.... .

I think that an opinion from a Board Medical Adviser knowledgeable about pulmonary problems, who could provide us with a learned opinion as to whether there is or is not an etiological[ ] relationship between the vet[eran]'s service-connected chest injury and his fatal emphysema (notwithstanding the private physician's statement) would be most helpful.

R. at 236 (emphasis added). Dr. Rheingold's 2-page reply opined that "[a]ny relationship between the veteran's service connect[ed] scarring and fibrosis of the left diaphragm and his death is minimal, if any.... In summary, I don't believe the veteran's death was related to his service-connected disability." R. at 238.

The record also includes a letter from the BVA to appellant's representative indicating that a copy of the medical opinion was sent to him and that he was provided a period of 60 days for the submission of "additional *argument or comment* in regard to this opinion." R. at 239 (emphasis added). Appellant's representative signed the bottom of the form attesting that he had no further argument or comment, and returned the form to the BVA. *Id.*

The BVA decision on appeal quoted Dr. Rheingold's opinion in its entirety and concluded:

In light of the foregoing evidence, service connection for the cause of the veteran's death is not warranted.... Despite ... appellant's contentions that the veteran's death should be service connected because his service-connected disabilities complicated his pulmonary emphysema, it is our opinion that the record does not indicate

such a probability. After a thorough review of the entire record, including the history of the progression of the veteran's respiratory problems, we conclude that his service-connected disabilities did not materially or substantially contribute to cause his death.

R. at 8–11.

The Office of the BVA Chairman issued Memorandum 01–93–12 on May 28, 1993, which addressed the subject of the "processing of appeals affected by *Thurber v. Brown*, [5 Vet.App. 119 (1993),]" and cautioned: "It should be remembered that evidence received after the appellate record is transferred to the Board must be treated in accordance with Rule 1304, 38 C.F.R. § 20.1304." Pursuant to § 20.1304, an appellant and his or her representative generally have 90 days, following mailing of notice to them of certification of the appeal and transfer of the record to the BVA, to submit a request to offer additional evidence. A request submitted subsequently will not be accepted by the BVA unless appellant or his or her representative, by motion, demonstrates "good cause for the delay."

## II. Issues Present Common Question

The Court's discussion, *infra*, is directed to issues which present different aspects of the same question: Did the BVA err in its use of the medical opinion, *supra*, obtained from its own medical adviser?

## III. Discussion

### A. 38 U.S.C. § 7109

During the course of proceedings in this matter, it has been contended that 38 U.S.C. § 7109 precludes the BVA from obtaining any medical opinions not rendered by an independent source; this contention, in essence, challenges the validity of 38 C.F.R. § 20.901(a) (1993), and perhaps § 20.901(b), as well as the validity of any opinion rendered by a BVA medical adviser. In relevant part, § 7109 provides:

(a) When, in the judgment of the Board, expert medical opinion, in addition to that available within the [VA], is warranted by the medical complexity or controversy involved in an appeal case, the Board may secure an advisory medical opinion from

one or more independent medical experts who are not employees of the [VA].

(b) The Secretary shall make necessary arrangements with recognized medical schools, universities, or clinics to furnish such advisory medical opinions at the request of the Chairman of the Board....

In rebuttal, it has been contended that the reference in § 7109(a) to expert medical opinion available within the VA authorizes the BVA to utilize such opinion. Since the Court is deciding this case on the grounds stated below, it does not reach the issue of whether § 7109(a) or any other statutory authority authorizes the promulgation of a regulation or other mechanism pursuant to which the BVA may obtain an opinion from the VHA, the AFIP, or its own medical adviser.

### B. Compliance with *Thurber*

As a preliminary matter, the Court notes a line of Court precedent, *Colvin v. Derwinski*, 1 Vet.App. 171 (1991), *Hatlestad v. Derwinski*, 3 Vet.App. 213 (1992), *supplemented sub nom. Hatlestad v. Brown*, 5 Vet.App. 524 (1993), and *Thurber, supra*, which has sanctioned, under certain circumstances, BVA evidentiary development. The Court in *Colvin*, 1 Vet.App. at 175, stated:

BVA panels may consider only independent medical evidence to support their findings. If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory medical opinion, ordering a medical examination or citing recognized medical treatises in its decisions that clearly support its ultimate conclusions.

(Citations omitted.) In *Hatlestad*, 3 Vet. App. at 217, the Court "ampliff[ied] the requirement set forth in *Colvin*," and held that when utilizing medical treatises, "the Board should ... include in its decisions quotations from [them] ... of sufficient length so that their context ... is able to be determined." Finally, the Court's holding in *Thurber*, 5 Vet.App. at 126, applies to "any evidence developed or obtained by [the BVA] subsequent to the issuance of the most recent

[Statement of the Case (SOC)] or [Supplemental Statement of the Case (SSOC)]...." Evidentiary development by the BVA is consistent with statutory authority also suggestive of a BVA fact-finding role. *See, e.g.*, 38 U.S.C. § 7104(a) ("Board shall decide [an] ... appeal only after affording the claimant an opportunity for a hearing. Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation"); 38 U.S.C. § 7109 (empowers the Board to "secure an advisory medical opinion"); 38 U.S.C. § 7110 ("A claimant may request a hearing before a traveling section of the Board"); 38 U.S.C. § 7261(c) (providing that "in no event shall findings of fact made by the ... [BVA] be subject to trial de novo by the Court").

■■■■ However, the fact that the BVA is an appellate tribunal which may also be authorized to develop and consider certain new evidence does not mean that it is free to operate beyond the bounds of the statutes, regulations, and case law which govern the development of evidence and the adjudication of claims. The BVA decision on appeal must be set aside since the decision, at least in part, rests upon a medical opinion procured by a process which violates both the express holding of *Thurber, supra,* and the fair process principle underlying *Thurber*. *See* 38 U.S.C. § 7261(a)(3)(A), (a)(3)(D).

#### i. Express Holding

The Court's decision in *Thurber* established the following requirement:

> ... before the BVA relies, in rendering a decision on a claim, on any evidence developed or obtained by it subsequent to the issuance of the most recent SOC or SSOC with respect to such claim, the BVA must provide a claimant with reasonable notice of such evidence ... and a reasonable opportunity for the claimant to *respond to it.*

*Thurber,* 5 Vet.App. at 126 (emphasis added).

■■■ A BVA decision which relies upon a BVA medical adviser's opinion obtained by a process that does not ensure *Thurber*-type rebuttal violates the holding of *Thurber*.

*Thurber* held that the BVA must afford "a reasonable opportunity for the claimant to respond to [evidence developed or obtained by the BVA]." *Thurber,* 5 Vet.App. at 126. The response to which the claimant was entitled, as contemplated by *Thurber,* was not limited to argument or comment, but also included the claimant's right to submit additional evidence. Here, contrary to *Thurber,* the BVA specifically confined appellant's response to the submission of "additional argument and comment," thereby imposing an impermissibly narrow construction on the right afforded the claimant under *Thurber*. (Additionally, in this regard, the Court notes the Chairman's Memorandum No. 01–93–12 which incorporated the requirements of 38 C.F.R. § 20.1304 into the "processing of appeals affected by *Thurber*." Although not specifically raised by the facts here, if the BVA were to impose, when it intended to rely on its own medical adviser's opinion, the requirement of a showing of "good cause" by appellant under § 20.1304(b) as a precondition to submitting additional evidence to the BVA after the mailing of notice to them that the appeal has been certified and the record transferred to the Board, as discussed *supra,* such imposition would also violate *Thurber*. Appellant's right to submit evidence under *Thurber* is not premised upon a preliminary showing of "good cause." In so noting, we are not suggesting, however, that a reasonable period during which an appellant may submit evidence or otherwise respond cannot be established consistent with *Thurber*.)

#### ii. Fair Process Principle

The Court premised its holding in *Thurber,* in part, upon considerations of fair process. The Supreme Court case of *Gonzales v. United States,* 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467 (1955), referenced in *Thurber,* is perhaps most aptly illustrative of this fair process principle. In *Gonzales* the Supreme Court held that despite the silence of the applicable statute and regulations as to a particular procedural requirement, such requirement was implicit in the statute and regulations when "viewed against our underlying concepts of procedural regularity and basic fair play." *Thurber,* 5 Vet.App. at 123

(quoting *Gonzales,* 348 U.S. at 412, 75 S.Ct. at 412) (emphasis added).

■ A BVA decision which relies upon a BVA medical adviser's opinion obtained by a process that does not ensure an impartial opinion violates *Thurber*-type fair process. We hold that basic fair play requires that evidence be procured by the agency in an impartial, unbiased, and neutral manner. The process employed here cannot be sustained as fair.

In soliciting a medical opinion on the question of the "etiological[ ] relationship between the vet[eran]'s service-connected chest injury and his fatal emphysema," the Board employee himself provided the answer: "Clearly, his inservice chest injury was not related to his fatal pulmonary emphysema." The Court holds that such a statement evidences that there was no process at work to ensure impartiality, and creates the impression that the Board was not securing evidence to determine the correct outcome, but rather to support a predetermined outcome. *See Withrow v. Larkin,* 421 U.S. 35, 47, 54, 95 S.Ct. 1456, 1464, 1468, 43 L.Ed.2d 712 (1975) (although the combination of investigative and adjudicative functions does not necessarily create an unconstitutional "bias or the risk of bias or prejudgment" in the administrative adjudication, the Supreme Court cautioned that "we should be alert to the possibilities of bias that may lurk in the way particular procedures actually work in practice"); *see also City of Charlottesville v. FERC,* 774 F.2d 1205, 1212 (D.C.Cir.1985), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986) ("[i]n order to establish improper prejudgment of a case, it must appear to 'a disinterested observer ... that [the agency] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it'" (citations omitted)); *Cinderella Career and Finishing Schools, Inc. v. FTC,* 425 F.2d 583, 590 (D.C.Cir.1970) (noting the "marked difference between the issuance of a press release which states that the Commission has filed a complaint because it has 'reason to believe' that there have been violations, and statements by a Commissioner after an appeal has been filed which give the appearance that he has already prejudged the case and that the ultimate determination of the merits will move in predestined grooves"); *cf. Burke v. Bd. of Governors of the Federal Reserve System,* 940 F.2d 1360, 1368 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1957, 118 L.Ed.2d 559 (1992) (ex parte communication restriction of the Administrative Procedure Act (APA) did not apply to a legal memorandum from the agency's legal counsel to the administrative law judge because the memorandum constituted contact within the agency); *Do–Right Auto Sales v. Howlett,* 401 F.Supp. 1035, 1039 (N.D.Ill.1975) ("fact that an investigator in an administrative body is biased is not fatal to the decision of that body ... [; w]hat is crucial to the validity of a decision is the actual impact of bias on the person who makes the decision") (citations omitted).

### C. Consideration of Applicable Regulations

The Court has repeatedly cautioned the BVA that it is not free to ignore the VA's duly promulgated regulations, and has noted that "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Fugere v. Derwinski,* 1 Vet.App. 103, 108 (1990) (quoting *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974)); 38 U.S.C. § 7104(a), (c); *see Vitarelli v. Seaton,* 359 U.S. 535, 538, 539–40, 79 S.Ct. 968, 971–72, 972–73, 3 L.Ed.2d 1012 (1959); *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 267–68, 74 S.Ct. 499, 503–04, 98 L.Ed. 681 (1954); *see also, e.g., Coleman v. Brown,* 5 Vet.App. 371, 374 (1993); *Franklin v. Brown,* 5 Vet.App. 190, 193 (1993); *Fanning v. Brown,* 4 Vet.App. 225, 229 (1993); *Young v. Brown,* 4 Vet.App. 106, 109 (1993); *Tripp v. Derwinski,* 3 Vet.App. 173, 175 (1992); *Karnas v. Derwinski,* 1 Vet.App. 308, 313 (1991). As the Court stated in *Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990), "[o]nce a veteran raises a well grounded claim to which a regulation could reasonably apply, the BVA must apply that regulation or give the reasons [or] ... bases explaining why it is not applicable. *See Gilbert v. Derwinski,* 1 Vet.App. 49[, 57] (1990)." *See* 38 U.S.C. § 7104(d)(1).

Applying this principle here, the BVA decision on appeal must be set aside since the BVA, in supplementing the record with a Board medical adviser opinion obtained pursuant to the Chairman's Memorandum No. 01–91–21, failed to apply facially applicable regulations, or to give reasons or bases explaining why such regulations were not applicable. *See* 38 U.S.C. § 7261(a)(3)(A), (a)(3)(D).

■ First, Memorandum 01–91–21 makes the "notice and comment procedures provided" in 38 C.F.R. § 20.903 applicable with respect to opinions obtained from Board physicians. The "notice and comment procedures" of § 20.903 include notification to appellant and his or her representative *"[w]hen* an opinion is *requested* by the Board" (emphasis added). Since the record contains no indication that appellant or her representative was notified of such request at the time that the Board medical adviser opinion was requested, the BVA failed to comply with the terms of § 20.903, or to give reasons or bases as to why such compliance was unnecessary.

Second, the BVA failed to address the relationship among, and applicability of, 38 C.F.R. § 19.9 (1993), 38 C.F.R. § 20.901, VA General Counsel opinion (O.G.C.Prec.Op.) 16–92 (July 24, 1992), and Memorandum No. 01–91–21. Section 19.9 directs: "When, during the course of review, it is determined that further evidence or clarification of the evidence ... is essential for a proper appellate decision, a Section of the Board shall remand the case to the agency of original jurisdiction [ (AOJ) ], specifying the action to be undertaken." However, § 20.901 provides the BVA with discretion for it to obtain medical opinions from the Armed Forces Institute of Pathology (AFIP), § 20.901(b), legal opinions from the General Counsel of the VA, § 20.901(c), and medical opinions from the Veterans Health Administration (VHA) and from independent, non-VA, sources (independent medical expert (IME) opinions), § 20.901(a), (d). With respect to the medical opinions, the regulation states:

(a) *Opinion of the Chief Medical Director.* The Board may obtain a medical opinion from the Chief Medical Director of the [VHA] ... of the [VA] on medical questions involved in the consideration of an appeal when, in its judgment, such *medical expertise is needed for equitable disposition* of an appeal.

(b) *[AFIP] ... opinions.* The Board may refer pathologic material to the [AFIP] ... and request an opinion based on that material.

(d) *[IME] ... opinions.* When, in the judgment of the Board, additional medical opinion is warranted by the *medical complexity or controversy* involved in an appeal, the Board may obtain an advisory medical opinion from one or more medical experts who are not employees of the [VA]. Opinions will be secured, as requested by the Chairman of the Board, from recognized medical schools, universities, clinics, or medical institutions with which arrangements for such opinions have been made by the Secretary....

38 C.F.R. § 20.901(a), (b), (d) (emphasis added). O.G.C.Prec.Op. 16–92 provides, as relevant here:

Pursuant to statutes and regulations, certain classes of evidence, i.e., independent medical opinions, ... 38 C.F.R. § 20.901(d), and opinions of the Chief Medical Director, the General Counsel, and the [AFIP] ..., 38 C.F.R. § 20.901(a), (b), and (c), may be considered by BVA without reference to the AOJ.

A literal reading of § 19.9 reveals that remand to the AOJ is mandatory when the BVA determines that further development of the record is essential. Section 20.901(a), (b), and (d) appear to be the exclusive regulatory exceptions to the general rule of mandatory remand under § 19.9 by which the BVA may supplement the record with additional medical opinions. Section 20.901 does not address BVA medical adviser opinions. While the record on appeal here indicates that the BVA determined that record development was essential since it supplemented the record with a Board medical adviser opinion, it did not remand the case pursuant to § 19.9, and it did not give reasons or bases explaining why it did not remand pursuant to § 19.9. Although the Secretary apparently suggests that O.G.C.Prec.Op. 16–92 permits an exception to the mandate of § 19.9 for

BVA medical adviser opinions (*see* Appellee's Memorandum at 16–17), O.G.C.Prec.Op. 16–92 seems to allow for an exception to the command of § 19.9 only with respect to § 20.901 opinions, and not with respect to Board medical adviser opinions. *Cf. Bernard v. Brown,* 4 Vet.App. 384, 393–94 (1993).

Assuming, without deciding, that § 20.901 is a nonexclusive exception to § 19.9, and that an internal BVA memorandum could lawfully establish additional exceptions to a duly adopted Department regulation prescribed by the Secretary—a proposition deserving the closest scrutiny—it is unclear what, if any, criteria guide the determinations as to whether the BVA procures a medical opinion pursuant to § 20.901 (from the VHA, the AFIP, or an IME) or when a Board medical adviser opinion is procured pursuant to the Chairman's Memorandum No. 01–91–21. While the application of § 20.901(a) and (d) is guided by the standards of "medical expertise ... needed for equitable disposition" and of "medical complexity or controversy," Memorandum No. 01–91–21 contains no comparable standards. With respect to an opinion relating to pathologic material contemplated by § 20.901(b) which may also be contemplated by the Memorandum, neither authority provides standards as to when an opinion shall be sought pursuant to such authority. *See Hood v. Brown,* 4 Vet.App. 301, 302–04 (BVA's compliance with the statutory reasons or bases requirement was frustrated by the unarticulated criteria in the applicable regulation). (It is interesting to note that ¶ 7.21 of the MBVA–1, Part II, which was superseded by Memorandum No. 01–91–21, contained the following standard: "Assistance to the professional staff of the Board is furnished by the Board's Medical Advisers on the *more difficult, complicated or controversial claims involving medical questions and matters of medical jurisprudence* " (emphasis added).)

Third, it is uncontested that Memorandum No. 01–91–21, pursuant to which the Board medical adviser opinion was obtained, was not published in the Federal Register, was not subject to public comment, and did not address its relationship to either 38 C.F.R. § 1.12 or § 1.551 (1993), regulations which are modeled upon the APA provisions of 5 U.S.C. § 553 and § 552(a)(1), respectively. *See* 38 U.S.C. § 7261(a)(3) (scope of the Court's review extends to "decisions, findings ..., conclusions, rules, and regulations issued or adopted by the ... Chairman of the [BVA]").

Section 1.12 sets forth the policy of the VA to afford the public general notice through publication in the Federal Register of proposed regulatory development, and an opportunity to participate in such development. Section 1.12 further provides:

> Exceptions to the policy of permitting public participation in the regulatory development may be authorized by the Secretary or one of the Secretary's deputies if adequately justified and concurred in by the General Counsel. Such exceptions, unless public comment is required by statute, may be recommended when: (a) The proposed regulations consist of interpretative rules, general statements of policy, or rules of [VA] organization procedure or practice, or (b) when the [VA] for good cause finds (and incorporates the findings and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

There is no indication on the face of the Memorandum that it was approved as an exception by having been authorized by the Secretary or one of the Secretary's deputies and concurred in by the General Counsel. Additionally, unless it was authorized under the exception provision of § 1.12(a), the Memorandum is defective on its face under § 1.12(b) for not having incorporated the findings and reasons for such findings with respect to notice and public procedure being "impracticable, unnecessary, or contrary to the public interest."

Further, 38 C.F.R. § 1.551(b) requires the development, with the Secretary's approval, and the submission for publication in the Federal Register, of VA "regulations" containing:

> (1) Statements of the general course and method by which [VA] functions are channeled and determined, including the

 

*nature and requirements of all formal and informal procedures available.*

(2) *Rules of procedure and instructions* as to the *scope* and contents of *all* papers, reports, or *examinations*.

(3) Substantive rules of general applicability adopted by the [VA] as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the [VA].

(4) Every amendment, revision, or repeal of the foregoing.

38 C.F.R. § 1.551(b) (emphasis added). Moreover, § 1.551(c) provides that a person cannot be "adversely affected by any matter required by this section to be published" in the Federal Register if it has not been so published, unless the person has "actual and timely notice of the terms" of the matter. While § 1.551(b) and (c) appear to be facially applicable to the Board medical opinion obtained here pursuant to the Chairman's Memorandum, no reasons are provided by either the BVA or the Memorandum itself as to their inapplicability.

While the Court is not prepared to hold, at this time, that either § 1.12 or § 1.551 must be complied with in order to authorize the Chairman's Memorandum No. 01–91–21, there is no present basis in the record, including the Memorandum and the BVA decision, for the Court to hold that compliance with them is not required. As a consequence, the record is insufficient to facilitate effective judicial review. *See* 38 U.S.C. § 7252(b); *Ashley v. Brown*, 6 Vet.App. 52, 56 (1993); *McGhee v. Brown*, 5 Vet.App. 441, 444 (1993). Therefore, the Court cannot sustain a BVA decision which relied upon evidence obtained pursuant to the Memorandum.

## IV. Conclusion

For the reasons stated above, the Court vacates the January 12, 1993, BVA decision, and remands the matter for proceedings consistent with this opinion.

The Court expresses its gratitude to amici and counsel for the parties who submitted briefs and memoranda of law, and presented oral argument in this case. Their contributions have been of great value to the Court.