**Bernard R. SMITH, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 94–1031.**

United States Court of Veterans Appeals.

Sept. 4, 1996.

As Amended on Denial of Reconsideration Jan. 17, 1997.

Stephanie Forester, Washington, DC, was on the pleadings, for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Rudrendu Sinhamahapatra were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and MANKIN * and IVERS, Judges.

NEBEKER, Chief Judge:

The appellant, Bernard R. Smith, appeals an August 31, 1994, Board of Veterans' Appeals (Board or BVA) decision denying entitlement to service connection for a varicocele. (Varicocele is "a varicose enlargement of the veins of the spermatic cord producing a soft compressible tumor mass in the scrotum." WEBSTER'S MEDICAL DESK DICTIONARY 751 (1986).) The Board's decision also denied entitlement to service connection for residuals of a hemorrhoidectomy, but the appellant has not appealed that issue. The appellant has submitted a motion for remand in lieu of a brief. The Secretary has filed a response in opposition of the motion. After consideration of the record on appeal and the pleadings of the parties, the Court will vacate the

---

* Judge Mankin was assigned and participated in this case, but died before its final disposition.

BVA's decision and remand the matter for the following reasons.

## I. FACTS

The appellant served in the U.S. Army from June 1944 to April 1946. Record (R.) at 21. He initially claimed entitlement to service connection for a varicocele in January 1978. R. at 24–27. He submitted a diagnosis dated March 1978 of a varicocele above his left testicle. R. at 38. The regional office (RO) discovered that his service medical records had been lost in a fire at the National Personnel Records Center in 1973. R. at 31. The RO denied his claim on March 1, 1978. R. at 34. A couple of weeks later, the appellant submitted a statement explaining that he had been kicked in the groin during basic training at Camp Blanding, after which he was unable to complete basic training due to the injury. R. at 41–42. He reported that he had been treated for this condition by Dr. Paul K. Good, but no treatment records were available. *Ibid.* The RO sent the appellant a letter requesting that he furnish the dates he was treated at Camp Blanding and any medical evidence which established the continuity of treatment from separation from service to the present. R. at 46. The appellant responded that he had not been able to obtain hospitalization records from Camp Blanding and that he was treated after discharge by Dr. Paul K. Good, but that those records were not available. R. at 48. A May 1978 RO decision referred to the appellant's claim for service connection for a varicocele as an attempt to reopen and stated, "Vet[eran]'s claim is a duplicate of that denied by 3–1–78 rating due to not being shown in any service records. No new [and] material evidence submitted. Confirm prior denial." R. at 51. The RO sent the appellant a letter dated May 24, 1978, stating:

> The application which you recently filed for disability benefits is essentially a duplicate of a claim previously filed by you.

> Our records show that we notified you on March 9, 1978 that your claim for varicose veins, left testicle was disallowed and that you were permitted to appeal this decision within one year from that time, otherwise that decision would become final unless you could submit new and material evidence. Since you have not presented any new and material evidence, no change in our previous decision is warranted and no action on your duplicate claim will be taken.

R. at 53.

The appellant then wrote the RO a letter stating it had always been his belief that the Army "keep[s] very detailed records," but that his Camp Blanding records were not available. R. at 56. He attached a form dated May 29, 1945, which informed the commanding officer at Camp Blanding that the appellant was to report for physical examination on June 1, 1945. R. at 58. The RO again decided that the appellant had not submitted any new and material evidence. R. at 61, 63.

In May 1985, the appellant submitted another statement reiterating that he had been kicked in the groin and, as a consequence, had not finished basic training. R. at 70–71. The RO determined that no new and material evidence had been submitted to reopen his claim for service connection. R. at 78. In December 1988, the appellant submitted copies of daily sick reports which noted that in August 1944 he had undergone treatment for an unspecified condition which preexisted service. R. at 114–19. The RO again found that the appellant had not submitted any new and material evidence to warrant reopening his claim. R. at 124.

In a personal hearing in July 1989, the appellant alleged that after he had been kicked in the groin in August 1944, his service records had been changed to show that the varicocele preexisted service to protect the officer who had kicked him. R. at 149. He also testified that the injury he sustained at that time had persisted over the years and had interfered with his sex life. R. at 151. The hearing officer found that no new and material evidence had been submitted. R. at 157–58. The appellant appealed that decision to the BVA which, in a March 1990 decision, considered the claim on a de novo basis and determined that a varicocele was not incurred in or aggravated by service. R. at 170–74.

The appellant appealed that decision to this Court. *Smith v. Derwinski*, 2 Vet.App. 147 (1992). We held that the Board had improperly required objective medical evidence to corroborate the appellant's testimony and had not complied with its duty to provide adequate reasons and bases for its denial of service connection; we vacated the Board's decision and remanded the matter. On remand from this Court, the BVA issued another decision which relied on medical treatises to deny entitlement to service connection. R. at 252–58. The appellant again appealed to this Court, and on February 14, 1994, we granted the parties' joint motion to vacate and remand for the Board to comply with *Thurber v. Brown*, 5 Vet.App. 119 (1993).

On remand, the appellant submitted a sworn statement from his wife in which she stated:

I am intimately familiar with the physical capacity of my husband, being married to him prior to him entering into the service. Upon his discharge, I truly affirm, that my husband suffered from a service related disability which interfered with sexual activity for the past 48 years; that I have personally witnessed discomfort, pain, anxiety, and occasional dysfunction as a result of such injury; that there is no treating physician, friend or person knowledgeable with the condition who is any longer alive.

R. at 266. On June 9, 1994, the BVA sent the appellant's attorney a letter explaining that the BVA proposed to rely on " 'evidence developed or obtained by it subsequent to the issuance of the most recent' Statement of the Case.... " R. at 270. The letter went on to state:

A period of 60 days from the date of this letter is allowed for you to submit any additional argument or comment....

....

The Board will consider additional evidence in this appeal only on written motion for *good cause for its submission* at this time and if the evidence is accompanied by a waiver of consideration by the agency of original jurisdiction.

R. at 270–71. Attached were a statement of the reliance the Board proposed to place on the evidence and excerpts from the pertinent treatises. R. at 272–92. No response was received to the invitation to submit within 60 days additional argument or comment, although apparently the White House forwarded to VA a copy of a letter the appellant had written to President Clinton regarding his quest for benefits. *See* R. at 294, 296. The Board's decision now on appeal followed.

## II. ANALYSIS

The appellant argues in his motion for remand that the BVA relied on medical treatises to support its denial of the appellant's claim without providing the appellant with an opportunity to submit additional evidence as required by *Thurber, supra*, and *Austin v. Brown*, 6 Vet.App. 547 (1994). Although the February 1994 remand by this Court directed the BVA to comply with *Thurber, supra*, the BVA had restricted the appellant's response to the submission of additional argument or comment and told him that the BVA would only consider additional evidence on written motion for good cause for its submission. *See* R. at 270. The appellant additionally argues that the BVA again failed to provide adequate reasons and bases for its denial in that it found the appellant's testimony not to be particularly credible because of the lack of corroboration by medical records. The appellant points out that the BVA gave no reasons for its implicit rejection of his wife's sworn statement. Finally, the appellant argues that the BVA failed to fulfill its duty to assist the appellant by not reopening his claim and informing the appellant that he had 60 days in which to furnish information regarding possible alternate sources of evidence as required by the VA ADJUDICATION PROCEDURE MANUAL, (M21–1). In response to the appellant's motion, the Secretary argues that his claim for service connection was not well grounded and, therefore, any errors in the BVA's decision are harmless.

In the interim, the Court of Appeals for the Federal Circuit upheld this Court's decision in *Barnett v. Brown*, 83 F.3d 1380 (Fed. Cir.1996), *aff'g* 8 Vet.App. 1 (1995), concluding that the Board must preliminarily decide that new and material evidence has been

presented in a case it has previously adjudicated, before addressing the merits of the claim. *Barnett*, 83 F.3d at 1383. This is a mandatory jurisdictional requirement. 38 U.S.C. § 5108. Moreover, once the Board finds that no such evidence has been offered, that is where the analysis must end. *Barnett*, 8 Vet.App. at 4. The Board's review of the evidence of record is necessary to determine whether new and material evidence has been submitted, but a "review [of] the former disposition of the claim" (§ 5108, *supra*) by the Board is beyond its jurisdiction. *Barnett*, 83 F.3d at 1384 (holding "that the Board does not have jurisdiction to consider a claim which it previously adjudicated unless new and material evidence is presented"); *see also McGinnis v. Brown*, 4 Vet.App. 239, 244 (1993) (Board reopening is unlawful when new and material evidence has not been submitted). However, in the present case we need not decide whether *Barnett* is retroactively applicable because our earlier vacation and remand *directed* a merits consideration, not a new and material evidence analysis. Despite the Secretary's argument to the contrary, we conclude that under the circumstances revealed in this record, the appellant's claim is well grounded. While the well groundedness of the initial claim filed in 1978 may be questioned, we need not address the point. By the mid–1980's, the record contained evidence that appellant was unable to complete basic training because of the kick in the groin. More important is his testimony that the symptoms continued over the years and had interfered with his sexual performance. This was corroborated by the appellant's wife's statement. Plausibility of the claim thus existed at least from 1989. Accordingly, we deal with the other issues raised.

In its decision, the Board stated:

The Board's review of several surgical and neurological texts does not show that blunt trauma of the scrotum or groin causes or helps to cause a varicocele.... Those texts show that the left testicle is affected 90 percent of the time (the veteran's varicocele is on the left) and that the cause is idiopathic or due to incompetent valves in the testicular veins.... The Board finds that these authorities are probative as the

etiology [of] this varicocele. As a matter of law, as a lay person, the veteran's testimony as to the cause of his condition is not competent evidence of causation. *Gowen v. Derwinski*, 3 Vet.App. 286, 288–89 (1992). [This is a memorandum decision and therefore of no precedential value. *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992); *but see Espiritu v. Derwinski*, 2 Vet.App. 492 (1992).] Moreover, the veteran has not cited any medical texts or authorities to support his theory. Since there is no medical authority to support his position, the incidental evidence showing that he was treated for an unspecified preexisting disorder in August 1944 and that his basic training was abbreviated is not relevant as those circumstances are germane to the issue of service incurrence only if one accepts his medically unsupported position that trauma caused the varicocele.

R. at 11–12. The Board also found that the preponderance of the evidence was against the appellant's alternative claim that any preexisting varicocele was aggravated by service. R. at 12.

*Thurber*, 5 Vet.App. at 126, requires that before the BVA relies, in rendering a decision on a claim, on any evidence developed or obtained by it subsequent to the issuance of the most recent [Statement of the Case] or [Supplemental Statement of the Case] with respect to such claim, the BVA must provide a claimant with reasonable notice of such evidence ... and a reasonable opportunity for the claimant to respond to it.

In *Austin*, this Court dealt with the same issue—a letter advising the appellant of the BVA's intended reliance on evidence developed after the issuance of the last Statement of the Case and its requirement that good cause be shown to submit additional evidence. As this Court explained in *Austin*, the appellant's right to submit evidence under *Thurber* cannot be premised on a preliminary showing of "good cause." *Austin*, 6 Vet.App. at 551. As in *Austin*, the BVA's decision here violates the fair process principle because it relies on evidence obtained in

"a process that does not ensure an impartial opinion." *Id.* at 552.

■ The Board suggests in its decision that the appellant's testimony regarding in-service onset of his condition is not credible because he has not supported that testimony with medical documentation.

> Since there is no medical authority to support his position, the incidental evidence showing that he was treated for an unspecified pre-existing disorder in August 1944 and that his basic training was abbreviated is not relevant as those circumstances are germane to the issue of service incurrence only if one accepts his medically unsupported position that trauma caused the varicocele.

R. at 12. Regarding the appellant's alternative claim that, if his varicocele did preexist service, it was aggravated thereby, the Board stated it did "not find that the veteran's testimony is particularly credible in view of the absence of records of treatment during the more than three decades which elapsed during the time after his discharge from service and his initial claim for service connection." R. at 12. "Nowhere do VA regulations provide that a veteran must establish service connection through medical records alone." *Cartright v. Derwinski*, 2 Vet.App. 24, 25 (1991); *see also Triplette v. Principi*, 4 Vet.App. 45, 49 (1993). Moreover, the Board does not even mention the appellant's wife's statement. The Board is not free to ignore evidence of record. *Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991).

■ Finally, as the appellant points out in his motion for remand, VA failed to follow the VA ADJUDICATION MANUAL, (M21–1) Part III, para. 4.22(c)(2), which requires that

> If benefits were denied prior to May 18, 1990, and a case for which [the Army Surgeon General's office (SGO) ] records may exist (Army veteran with service during the periods 1942–1945 or 1950–54) is encountered during normal processing, the regional office will reopen the claim on its own initiative to obtain any SGO records.

The record on appeal does not show that VA attempted to obtain any SGO records. Also, where, as here, service medical records have been destroyed or lost, the Board has a duty to advise the claimant to obtain other forms of evidence. *Dixon v. Derwinski*, 3 Vet.App. 261, 263 (1992) (In "fire-related" cases, the M21–1 instructs VA personnel to assist the claimant in obtaining evidence from alternate or collateral sources and includes a list of appropriate alternate forms of evidence to be considered in lieu of missing service medical records.); *see also Layno v. Brown*, 6 Vet. App. 465, 469 (1994). The Board failed to do this.

## III. CONCLUSION

Accordingly, the Board's decision regarding denial of service connection for a varicocele is VACATED and the matter REMANDED for further adjudication. On remand, the appellant will be free to submit additional evidence and argument, and the Board must seek any other evidence it thinks is necessary to the resolution of the appellant's claim. *Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992).

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, HOLDAWAY, IVERS, and STEINBERG, Judges.

### ORDER ON RECONSIDERATION

#### Jan. 17, 1997

On consideration of the motion of the Secretary for reconsideration by the panel, it is by the panel

ORDERED that the motion for reconsideration is otherwise denied. It is further by the full Court

ORDERED that the motion for review by the full Court is denied.

HOLDAWAY, Judge, concurring:

I agree with the dissenting members. The Board, correctly, based on the precedent from this Court that was cited and relied upon in its decision, found the case not well grounded. That finding, if correct, would obviate consideration of the issues upon which remand was based. Nonetheless I vote to deny en banc consideration. This case provides no precedent except in a very narrow range of cases that are factually identical. As such it is not a case of "exceptional importance" nor does it purport to vitiate our general rule that requires medical nexus. In short this case is an aberration. This judge, at least, will continue to apply the precedents cited in the dissent that preclude lay persons from supplying medical nexus to "well ground" a claim.

STEINBERG, Judge, with whom KRAMER, Judge, joined, dissenting:

We voted for the Secretary's motion for en banc review of this two-judge opinion because we believe that the Secretary is correct that the Court's holding that the claim here is well grounded is essentially inconsistent with the court's caselaw requiring medical-nexus evidence where the question at issue is of a medical nature (for example, etiology, causation, or diagnosis). *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table); *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993). Hence, we believe that en banc review "is necessary to ... maintain uniformity of the Court's decisions or to resolve a question of exceptional importance". U.S.VET.APP.R. 35(c).

As the Secretary points out there is no "competent evidence establishing[1] that the alleged kick in the groin [during service] caused the development of a varicocele." Motion at 2. The Court relies, for its finding that the claim is well grounded, upon the appellant's testimony and his wife's statement that "the symptoms [it is unclear what symptoms specifically] continued over the years and had interfered with his sexual performance." *Smith (Bernard) v. Brown,* 9 Vet.App. 363, 366–67 (1996).

In contrast, the Board concluded:

Since there is no medical authority to support [the appellant's] position [that a kick in the groin caused his varicocele], the incidental evidence showing that he was treated for an unspecified pre-existing disorder in August 1944 and that his basic training was abbreviated is not relevant as those circumstances are germane to the issue of service incurrence only if one accepts his medically unsupported position that trauma caused the varicocele.

R. at 12. We believe that the Board is correct that lay evidence cannot be competent evidence of medical causation and that such evidence is required to well ground this claim. *See Stadin v. Brown,* 8 Vet.App. 280, 284 (1995); *Moray v. Brown,* 5 Vet.App. 211, 214 (1993); *Kates v. Brown,* 5 Vet.App. 93, 95 (1993); *Grottveit, supra; Espiritu v. Derwinski,* 2 Vet.App. 492, 494–95 (1992).

Although the Court in its opinion does not cite 38 C.F.R. § 3.303(b) (1995), regarding continuity of symptomatology, the Secretary seems to suggest in his motion that the Court's opinion is implicitly relying on continuity of symptomatology to well ground the claim and that the conditions under which that might be permissible are not present because this case does not involve a potentially chronic condition that arose in service. On November 20, this Court issued a briefing order in *Savage v. Brown,* 9 Vet.App. 520 (1996), raising numerous questions about the meaning and application of § 3.303(b) regarding the use of or need for continuity of symptomatology as to a service-connection claim and what the relationship of that concept is to the need for medical evidence of a nexus between a current medical condition and the veteran's service. Until those issues are resolved in *Savage,* the current opinion should be withheld.

In *Caluza,* the Court reiterated that medical evidence of nexus to service was generally required in order to well ground a service-connection claim. *Caluza, supra* (citing *Grottveit, supra*). As the Secretary's motion indicates, the Court's opinion in *Smith* will add confusion to the Court's caselaw on the question of the nature and quality of the evidence needed to well ground a claim. *Compare Tirpak v. Derwinski,* 2 Vet.App. 609, 610–11 (1992) (holding physician statement that veteran's death "may or may not" have been averted if medical personnel had been able to intubate him, a procedure complicated by his service-connected injuries, insufficient to well ground claim for service connection for veteran's cause of death), *and Boeck v. Brown,* 6 Vet.App. 14, 16–17 (1993) (applying *Tirpak, infra,* and holding that physician's statement that veteran was "ill-served" as a patient at VA hospital was too vague and speculative to well ground claim), *and Latham v. Brown,* 7 Vet.App. 359, 365–66 (1995) (distinguishing *Tirpak* and stressing that medical opinions need not "be

---

1. Indeed, there is no competent medical evidence even suggesting such causation; evidence less definitive than that which establishes a fact meets the degree of certitude necessary to well ground a claim, *see Meyer v. Brown,* 9 Vet.App. 425, 432 (1996) ("[t]he amount of evidence sufficient to make a claim well grounded differs from the amount sufficient for an award of service connection"); *Robinette v. Brown,* 8 Vet.App. 69, 76 (1995) ("to be well grounded a claim need not be supported by evidence sufficient for the claim to be granted").

expressed in terms of certainty in order to serve as the basis for a well[-]grounded claim"), *and Molloy v. Brown,* 9 Vet.App. 513, 516 (1996) (distinguishing *Tirpak* and stating in dictum that medical evidence as to nexus to service expressed as "could" suffices for requirement of well-grounded claim, *with Alemany v. Brown,* 9 Vet.App. 518, 519 (1996) (ignoring *Tirpak* and holding that medical evidence as to nexus to service expressed as "possible" suffices for requirement of well-grounded claim), *and Watai v. Brown,* 9 Vet.App. 441, 443 (1996) (ignoring *Tirpak* and holding that medical evidence as to nexus to service expressed as "very well might have been" suffices for requirement of well-grounded claim); *cf. Falzone v. Brown,* 8 Vet.App. 398, 403, 406 (1995) (holding appellant's flat-feet claim to be well grounded based on his statements regarding continuity of symptomatology, in-service notation indicating worsening of his pes planus, and confirmed existence of current condition on VA examination; his statements as to continuity of symptomatology "provide a direct link between the appellant's active service and the current state of his condition"); *Godfrey v. Brown,* 7 Vet.App. 398, 406 (1995) (where service-connection claim is based on continuity of symptomatology under 38 C.F.R. § 3.303(b) (1994), competent medical evidence not necessarily required to make claim well grounded).