STEINBERG, Judge,
dissenting.
I cannot join in the majority opinion because, although I agree with the result it reaches as to the arguments raised by the parties, I do not agree with the rationale used by the majority to obtain this result; moreover, I do not believe that this case is yet ripe for a panel decision and thus *217 cannot agree that the Board of Veterans’ Appeals (Board) decision should be affirmed. I do, however, join in all but the last two sentences of Judge Farley’s excellent concurring opinion, which I believe presents the proper analysis as to the arguments raised by the parties. I cannot join, however, in his conclusion agreeing with the majority’s affirmance because, in my view, that conclusion is premature in that there are two issues not addressed by the parties that need briefing and thorough analysis by the Court.

I. Effect of VA Regulations Amendments

First, although the majority correctly states the holdings of the Bemklau and Dyment opinions,[1] it fails either to consider or to request the parties to consider the possible effects of the Department of Veterans Affairs (VA) “Duty to Assist” regulations adopted on August 29, 2001, in connection with the enactment of the Veterans Claims Assistance Act of 2000.[2] I have set forth the reasons for the propriety of seeking additional briefing from the parties on this issue in my separate statements in Stephens (J.B.) v. Principi, 16 Vet.App. 191, 193-96 (2002), and Kuzma v. Principi, 16 Vet.App. 202 (2002) (en banc), and, for the reasons expressed there, I believe that the Court should likewise seek briefing in this case.

II. Effect of VA Manual Provisions

Another matter that I believe warrants further briefing and consideration is paragraph 2.01 b. of part 6, chapter 2, of the VA Adjudication Procedure Manual, M21-1 [hereinafter Manual M21-1], which defines the scope of the part 6, chapter 2 (“Rating Activity”), provisions as applicable to “Mating decisions ... on the following major issues relating to entitlement: [Sjervice connection for diseases and injuries”. Paragraph 2.09 then goes on to direct adjudicators as follows:
a. VA Examinations. If a VA report of examination (including VA Form 21-2680, “Examination of Housebound Status or Permanent Need for Regular Aid and Attendance”) is inadequate in any essential particular, the reasons for inadequacy will be outlined and the. report returned through channels for a corrected supplementary report or for reexamination. See also chapter 1.
b. VA Hospitalization. In the event a VA report of hospitalization is found to be inadequate in the following types of cases, request the original clinical records, including nurses’ and doctors’ orders:
(1) Cases involving injury or aggravation of injury or death as the result of hospitalization, medical or surgical treatment^] or examination.
(2) Death cases if the veteran, who died from a non[-]service-eonnected cause, had a service-connected neu-ropsychiatric disability that reasonably may have impeded, obstructed, or otherwise interfered with treatment for the condition that caused death, but the report does not clarify this issue.
c. Non-VA Facilities. If a report from a [sjtate, county, municipal, contract, or recognized private institution or hospital is inadequate in any essential particular, request clarification, and if a satisfactory corrected report cannot be *218 obtained within a reasonable period of time, authorize a VA examination.
Manual M21-1, pt. 6, ch. 2, para. 2.09 (emphasis added). This Court has held that Manual M21-1 provisions that “are substantive rules are ‘the equivalent of [VA] regulations’ ”, have regulatory force, and must be complied with in the VA adjudicatory process.[3]
The above provisions appear to set forth unequivocal commands to VA adjudicators rather than general guidance and exhortation. In this case, the Board described Dr. Patel’s report, inter alia, as follows: “The examination report was unremarkable and the examiner offered no opinion regarding the etiology of the veteran’s cardiovascular disability, other than to note the previous history, as reported by the veteran. There is no indication that the service medical records were actually reviewed.” Record (R.) at 5-6. The Secretary notes in his brief the lack of any statement regarding etiology in Dr. Patel’s report and further notes that the report failed to provide a rationale to support its statement as to “post viral cardiomyopathy”. Secretary’s Brief at 23. Although the Secretary argues that subsequent statements (R. at 503, 536) by the appellant’s private physician, Dr. Goulder, were strong enough to obviate the need for clarification from Dr. Patel {ibid.), such a rationale appears questionable in light of Manual M21-1 para. 2.09’s directions and in light of the fact that the RO had sought but had not received clarification from Dr. Goulder (R. at 549). Because Dr. Patel appears to have conducted the examination on the basis of a contract from VA (see R. at 411-12), Manual M21-1 para. 2.09 c. appears to be applicable and, if so, would require that the VA regional office (RO) involved “request clarification, and if a satisfactory corrected report cannot be obtained within a reasonable period of time, authorize a VA examination”. It appears unlikely that Dr. Wu’s examination (R. at 557-58) would be the “clarifying” examination as to Dr. Patel’s examination, because it was requested after the unanswered request for clarification from Dr. Goulder and made no reference to Dr. Patel’s examination. Also, it does not seem at all clear that Dr. Wu ever conducted an examination of the veteran. See R. at 554 (referral letter stating: “Examination is not required”).
Furthermore, if Dr. Patel is to be considered to have conducted a VA examination, Manual M21-1 para. 2.09 a. appears to apply and would require either an outline of “the reasons for [the] inadequacy” of the examination and a return of the report to Dr. Patel or a reexamination of the veteran. The record on appeal does not appear to contain any such outline of reasons by the RO (see R. at 1-614), and it appears that the report was not returned to Dr. Patel for “a corrected supplementary report”, as required by Manual M21-1, para 2.09 a. For the same reasons set forth above as to Manual M21-1 para. 2.09 c., there appears to be no indication that Dr. Wu’s report was a Manual M21-1 para. 2.09-required reexamination. Moreover, Dr. Hendrix’s independent medical opinion (IMO) likely could not qualify here because, even if there were an outline, he did not conduct an examination of the veteran. R. at 596-98.
When the case reached the Board, once it found that Dr. Patel’s report was inadequate the Board may well have had an obligation under 38 C.F.R. § 19.9(a) (1998) to remand the appellant’s claim to the RO for correction of a “procedural defect” un *219 der Manual M21-1 para. 2.09.[4] However, this and the other questions raised above concerning compliance with the Manual M21-1 should properly be addressed first by the parties and then examined fully by the Court.
Because the Court has proceeded to issue an opinion in this case without seeking additional briefing or considering fully the above issues, I cannot join in the majority opinion nor join fully in the concurring opinion. I respectfully dissent.

. Bernklau v. Principi, 291 F.3d 795 (Fed.Cir.2002); Dyment v. Principi, 287 F.3d 1377 (Fed.Cir.2002); see also Stephens (J.B.) v. Principi, 16 Vet.App. 191, 193-94 (2002) (Steinberg, J., concurring in part and dissenting in part).

. Pub.L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA). See 66 Fed.Reg. 45,620, 45,-630-32 (Aug. 29, 2001) (“Duty to Assist” regulations, amending 38 C.F.R. §§ 3.102, 3.156, 3.159; 3.326); see also Stephens (J.B.), supra.

. Patton v. West, 12 Vet.App. 272, 277 (1999) (quoting Cohen (Douglas) v. Brown, 10 Vet.App. 128, 139 (1997), and citing Smith (Bernard) v. Brown, 10 Vet.App. 44, 48 (1996); Hayes v. Brown, 6 Vet.App. 66, 67 (1993); Dixon v. Derwinski, 3 Vet.App. 261, 263 (1992); and Fugere v. Derwinski, 1 Vet.App. 103, 109 (1990)).

. I recognize that 38 C.F.R § 19.9 does not impose an absolute obligation, but it does require the Board of Veterans’ Appeals (Board) to exercise its judgment as to whether a "procedural defect” must be corrected in order for the Board to make "a proper appellate decision” on the facts of a particular case. Perhaps in this case the Board might find that Dr. Hendrix’s independent medical opinion (IMO) obviated the need for a remand under § 19.9 (it appears, as Judge Farley concludes in his concurring opinion, that paragraph (b)(1) of the regulation does qualify the mandate in paragraph (a) by permitting the Board to seek an IMO under 38 C.F.R. § 20.901 (1997) rather than remanding), but that is a matter to be addressed by the Board, and not the Court, in the first instance, see Elkins v. Gober, 229 F.3d 1369, 1377 (Fed.Cir.2000) ("[f]act-finding in veterans cases is to be done by the expert BVA, not by the Veterans Court”); Hensley v. West, 212 F.3d 1255, 1263 (Fed.Cir.2000) (noting "the general rule that appellate tribunals are not appropriate fora for initial fact finding”); Neumann v. West, 14 Vet.App. 12, 21, 2000 WL 1015287 (2000) (quoting Hensley, supra, and concluding that, although "the Court may reverse an incorrect judgment of law which is based upon proper factual findings, 'it should not simply [make] factual findings on its own' ”); Teten v. West, 13 Vet.App. 560, 564 (2000), and here the Board in its February 1999 decision not only did not address the M21-1 provisions but also did not address § 19.9.