# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-3525

RICK K. KAHANA, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided June 15, 2011)

*Sandra W. Wischow*, of Richmond, Virginia, was on the brief for the appellant.

*Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Nisha C. Wagle*, Acting Deputy Assistant General Counsel; and *Thomas E. Sullivan*, all of Washington, D.C., were on the brief for the appellee.

Before MOORMAN, LANCE, and SCHOELEN, *Judges*.

SCHOELEN, *Judge*, filed the opinion of the Court. LANCE, *Judge*, filed an opinion concurring in the result.

SCHOELEN, *Judge*: The appellant, Rick K. Kahana, appeals through counsel the portion of an August 10, 2009, Board of Veterans' Appeals (Board) decision that denied him entitlement to service connection for a right knee disability including as secondary to a service-connected left knee disability.[1] Record of Proceedings (R.) at 3-17. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). The question before the panel is whether the Board's findings concerning the credibility of the appellant's lay statements

---

[1] The Board, in the same decision, granted the appellant service connection for a low back disability. The Board noted that "some level of back problem in service as a result of his kickboxing activities is not unreasonable" and relied on a December 2008 VA examiner, who found that it was as likely as not that the appellant's low back disability was related to these falls in service. Record of Proceedings (R.) at 14.

conflict with the Court's holding in *Colvin v. Derwinski*, 1 Vet.App. 171 (1991). Because the Court holds that the Board erred in making a medical determination concerning the severity of an anterior cruciate ligament (ACL) in violation of *Colvin*, the Court will vacate the portion of the Board's decision denying the appellant entitlement to service connection for a right knee disability and remand the matter for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Facts

The appellant served on active duty in the U.S. Army from September 1976 until September 1979. R. at 737. The appellant's service medical records (SMRs) and service separation report of medical history include extensive references to in-service injuries to his left knee. R. at 613-708, 613-15. There is no reference to an injury to the right knee in the appellant's service separation report.[2] *Id.* By March 1980, the appellant had been granted service connection for his left knee injuries. R. at 603.

In April 1993, Dr. Frederick G. Nicola, the appellant's private orthopedist, performed arthroscopic surgery and an ACL reconstruction on the appellant's right knee.[3] R. at 262. According to the records of Dr. Sam Bakshian, the appellant's left ACL was surgically repaired for the first time in the early 1990s. R. at 558. Dr. Bakshian also reported that the appellant injured his back and both knees in 1995 while performing as a stuntman. R. at 509. Dr. Nicola subsequently performed a

---

[2] In the decision here on appeal, the Board found that there is no evidence of a right knee injury in the appellant's SMRs. R. at 14. The Court notes that the record contains a May 16, 1978, clinical record, which reported "effusion sighted r[ight] patella" and increased pain on palpation and on leg lift of the medial and lateral meniscus regions and a limited range of motion. R. at 634. The appellant makes no reference to this record cite and does not specifically dispute the Board's finding of no SMR evidence of a right knee injury in service. Nevertheless, the appellant maintains that he injured his right knee in service while participating in a Tae Kwon Do match in Korea and did seek medical attention at that time and was told it was "just a sprain." Appellant's Brief at 10.

[3] The April 1993 date for the appellant's right knee surgery performed by Dr. Nicola was recorded in a clinical record. According to the appellant's medical history contained in a VA medical examination report, the first surgical repair of a right ACL tear occurred in 1994. R. at 58. In January 2002, Dr. Nicola confirmed that he had performed a right ACL reconstruction on the appellant, but did not indicate the date. R. at 578.

bilateral ACL reconstruction. *Id.*

The appellant was provided a hearing before the Board in September 2007. R. at 306-26. There, he stated that he injured his right knee in service, and was unsure why the injury did not appear in his SMRs. R. at 311. He related that his original left knee injury was not fixed properly, and that led him to put too much pressure on his right leg so that when he was in a kickboxing competition in 1978 in Korea he "got kicked" and "got knocked down" and the right knee "snapped." R. at 311, 321. The appellant said "it was another ACL injury." R. at 321. The appellant also reported that he sustained an additional injury to his right knee following service, but attributed both the in-service and postservice injuries to the fact that he continually favored his left leg. R. at 325.

Following the appellant's hearing, in November 2007, the Board remanded the matter for additional development, which included providing the appellant with a VA medical examination "to determine the likely etiology of [his] current right knee . . . disabilit[y]." R. at 300-05. The Board noted:

> The veteran has not received a VA examination to specifically evaluate whether there is a relationship between his right knee . . . disabilit[y] and his military service. . . . As he has made *reasonable allegations* regarding the presence of such a relationship, the Board finds that such a VA examination is warranted prior to final adjudication of his claim.

R. at 302 (emphasis added).

In a December 2008 VA examination report, the examiner recorded the appellant's assertions that his right knee snapped during an in-service kickboxing competition. R. at 58. The appellant stated that he was seen at a clinic and was told he had only sustained a sprain. *Id.* He related that he continued to have problems following his discharge, and was eventually diagnosed with a right ACL tear that required surgical repair in the 1990s. *Id.*

The examiner concluded that the appellant injured his right knee while in service in 1979, but noted that the appellant did not seek treatment until the 1990s. R. at 73-74. The examiner also concluded that the appellant's right knee injury resulted from his habit of putting more weight on his right knee after numerous left knee injuries. R. at 74. In reaching her conclusions, the examiner reviewed private medical records, but did not review SMRS or VA records, and stated that she based her opinion on the history given by the appellant and the records of Dr. Nicola. *Id.*

VA requested that the claims folder be returned to the examiner who completed the December 2008 examination for "addendum, opinion[,] and r[a]tionale for opinion." R. at 54. Further instructions on the request stated:

> Examination report states SMR[]s NOT reviewe[d]. [Social Security Administration] records show [appellant] sustained injuries in 1994 secondary to work as a stuntman. No right knee injury in service. Injuries sustained post-service were not discussed.

*Id.*

Subsequently, in a March 2009 VA examination report, the same examiner who had performed the 2008 examination noted that the appellant reported an in-service injury to his right knee, but that there was no documentation in his SMRs of a right knee injury. R. at 47-48. The examiner concluded that the appellant's right knee injury is not related to his military service. R. at 48. As rationale for her decision, the examiner stated that "[t]here is no documentation of right knee injury in the [appellant's SMRs] to support [his] claim." R. at 48-49. The examiner, discussing the appellant's private medical records, noted that, while Dr. Nicola's letter indicates an in-service right knee injury, records from Dr. Sam Bakshian indicate that the appellant's right knee ACL tear was from a 1994 work-related injury. R. at 48. The examiner further found that the appellant's right knee condition "is not felt to be caused by or related to" his left knee condition. R. at 49. As rationale, the examiner stated that the appellant's injury, an ACL ligament sprain, "resulted from a specific trauma incident and is not an overuse type of injury. Medical records reviewed did not support that a right knee injury occurred during the [appellant's] service but rather was a work-related injury." *Id*.

The Board, in its August 10, 2009, decision here on appeal, denied the appellant entitlement to service connection for a right knee disability including as secondary to a service-connected left knee disability. The Board noted that the appellant's SMRs show that he injured his left knee while in service but do not show that he injured his right knee. R. at 14. The Board then found that the appellant's assertion that he tore his right ACL during service was not credible. R. at 14-15. The Board also found that the appellant was not competent to "provide an opinion regarding medical nexus." R. at 16. The Board found that the evidence failed to establish any continuity of symptomatology in his right knee after service, and the lengthy gap between his service and the first evidence of a right knee disorder in 1993 is "a factor against a finding that the disability was incurred

4

or aggravated in service." *Id.*

Regarding the March 2009 VA medical opinion, the Board found that it "provides specific probative evidence weighing against a finding that the [appellant's] current right knee disability is related to service or that it was caused or aggravated by the [appellant's] service[-]connected left knee disability." R. at 16.

## B. Arguments on Appeal

The appellant argues that the Board made an improper medical finding based on the nature of his claimed injury when it found that, had the appellant sustained such an injury in service, it would have required treatment and thus should have appeared in his SMRs. Appellant's Brief (Br.) at 8-9. The appellant also contends that VA, when it requested a revised medical opinion, improperly impinged on the examiner's impartiality by stating to the examiner that the appellant had sustained no right knee injury in service. *Id.* at 11-13. Finally, the appellant argues that the Board failed to provide an adequate statement of reasons or bases for its decision because it rejected his lay testimony based on a lack of supporting medical records and that the revised medical opinion is inadequate because it is based on an inaccurate factual premise. *Id.* at 8-9, 13-17.

The Secretary argues that the Board's finding that the appellant's injury should have required medical treatment was not an improper medical finding, but permissible as an "inference based on the evidence." Secretary's Br. at 12. The Secretary also asserts that the VA examiner, in her first opinion, relied only on medical history as provided by the appellant and private medical records. *Id.* at 14. Her opinion changed, the Secretary contends, after reviewing other evidence found in the claims file. *Id.* The Secretary further argues that VA asked for a revised opinion for a number of reasons, and that the Agency did nothing to solicit or predetermine the outcome of the examination. *Id.* at 15-16. The outcome of the revised examination, the Secretary argues, was a reflection of the evidence of record and not tainted by bias or impartiality. *Id.* at 16-17.

## II. ANALYSIS

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) incurrence or aggravation of a disease or injury in service; and (3) a nexus between the claimed in-service injury or disease and the current disability. *See*

*Davidson v. Shinseki*, 581 F.3d 1313, 1316 (Fed. Cir. 2009); *Hickson v. West*, 12 Vet.App. 247, 252 (1999); *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).  A finding of service connection is a finding of fact that the Court reviews under the "clearly erroneous" standard of review.  *See Dyment v. West*, 13 Vet.App. 141, 144 (1999).

When deciding a matter, the Board must include in its decision a written statement of the reasons or bases for its findings and conclusions, adequate to enable an appellant to understand the precise basis for the Board's decision as well as to facilitate review in this Court.  *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990).  To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant.  *See Caluza*, 7 Vet.App. at 506; *Gilbert*, 1 Vet.App. at 57.

## A. Lay Testimony[4]

The Board, in its role as factfinder, "is *obligated to*, and fully justified in, determining

---

[4] We generally agree with our colleague that too often the Board makes overbroad categorical statements regarding the competency and credibility of lay testimony.  However, our disagreement with our colleague's commentary on the proper evaluation of lay evidence starts at its base.  Where our colleague begins with the general proposition that lay witnesses generally are not competent to provide evidence on matters that require medical expertise, we understand the Federal Circuit's direction in this area to begin with the basic premise that "in the veterans' context, traditional requirements for admissibility have been relaxed." *Jandreau v. Nicholson*, 492 F.3d 1372, 1377 (Fed. Cir. 2007).  Thus, the Federal Circuit has flatly rejected the view that "competent *medical* evidence is required . . . [when] the determinative issue involves either medical etiology or a medical diagnosis." *Id.* at 1376-77 (emphasis added).  The Board is required to consider "all pertinent medical and lay evidence."  38 U.S.C. § 1154(a); *see also* 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.303(a), 3.307(b) (2010).  When considering such lay evidence, the Board should determine, on a case-to-case basis, whether the veteran's particular disability is the type of disability for which lay evidence is competent.  *See Jandreau*, 492 F.3d at 1376-77 (cited in *Robinson v. Shinseki*, 312 F. App'x. 336, 339, No. 2008-7096, 2009 WL 524737, at *2-3 (Fed. Cir. Mar. 3, 2009) (remanding the matter for consideration of the appellant's lay evidence, which requires a "two-step analysis" that begins with an evaluation of whether the veteran's disability is the type of injury for which lay evidence is competent)).  If the disability is of the type for which lay evidence is competent, the Board must weigh that evidence against the other evidence of record in making its determinations regarding the existence of service connection. *See Buchanan v. Nicholson*, 451 F.3d 1331, 1336-37 (Fed. Cir. 2006).

whether lay evidence is credible in and of itself." *Buchanan*, 451 F.3d at 1337 (emphasis added). Also, a layperson may be competent "to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." *Jandreau*, 492 F.3d at 1377 (footnote omitted). The Board rejected the appellant's lay statements based both on credibility and competency.

### 1. Credibility

In finding that the appellant's statements lack credibility, the Board stated:

> Given that a right ACL tear is quite a significant injury, one would expect to see at least some documentation of it in the [SMRs]. Also, one would expect that the [appellant] would have mentioned this right knee injury on his report of medical history at separation[,] but instead this document shows only that the [appellant] reported two separate injuries to the left knee. In addition[,] the Board notes that when the [appellant] initially filed his claim, he did not allege a right knee injury in service. Instead he alleged only that he incurred a left knee injury and that his right knee disability was secondary to that injury. The [appellant] then made similar contentions in his Notice of Disagreement. For all of these reasons, the Board does not find his more recent assertions of right knee injury in service credible.

R. at 15.

Regarding the Board's statement that, given the nature of the appellant's injury, some documentation in his SMRs is expected, the Court agrees with the appellant's argument that the Board violated the Court's holding in *Colvin*, *supra*. Appellant's Br. at 8-9. [5] In *Colvin*, the Court held that the Board "must consider only independent medical evidence to support [its] findings rather than provide [its] own medical judgment in the guise of a Board opinion." 1 Vet.App. at 172. Requiring the Board to support its medical determinations with independent medical evidence "ensures that all medical evidence contrary to the veteran's claim will be made known to him and be a part of the record before this Court." *Id.* at 175. In this case, the Board is making a medical determination as to the relative severity, common symptomatology, and usual treatment of an ACL injury without citing to any independent medical evidence to corroborate its finding. Indeed, the

---

[5] In his separate statement, our colleague is in agreement with this stated *Colvin* violation and the reasoning of the majority that follows on this point.

7

record is devoid of any medical evidence establishing the relative severity, common symptomatology, and usual treatment of an ACL injury. Therefore, the Court holds that the Board clearly erred when it found the appellant not to be credible based on its determination that a particular injury, which is alleged to have occurred in service, is of the type that should have been documented in the service records and was not.

The Secretary argues that the Board was drawing a permissible "inference based on the evidence." Secretary's Br. at 12. Drawing an "inference based on the evidence" is at the heart of any adjudication. However, under *Colvin*, when a Board inference results in a medical determination, the basis for that inference must be independent and it must be cited. The Court thus finds that the Board has violated *Colvin*, and its statement of reasons or bases for its determination that the appellant's lay statements lack credibility is inadequate. *See* 38 U.S.C. § 7104(d)(1); *Allday*, *Caluza*, and *Gilbert*, all *supra.* Therefore, in considering the matter on remand, the Board must reassess the weight and credibility of the appellant's lay statements and adequately explain any negative credibility determination. *See Washington v. Nicholson*, 19 Vet.App. 362, 367-68 (2005) (it is the Board's responsibility, as factfinder, to determine the credibility and weight to be given to the evidence).

### 2. Competency

The Board, in rejecting the appellant's lay statements based on competency, found that he "does contend that his current right knee disability is related to service and to his service-connected left knee disability, [but] as a layperson he is not competent to provide an opinion regarding medical nexus." R. at 16. This finding is legally unsupportable. This Court has held that "[l]ay testimony is competent . . . to establish the presence of observable symptomatology and 'may provide sufficient support for a claim of service connection.'" *Barr v. Nicholson*, 21 Vet.App. 303, 307 (2007) (quoting *Layno v. Brown*, 6 Vet.App. 465, 469 (1994)); *see also Jandreau*, *supra; Charles v. Principi*, 16 Vet.App. 370, 374 (2002) (stating that a layperson is competent to offer testimony regarding symptoms capable of observation). And, as stated earlier, there is no categorical requirement of "'competent medical evidence . . . [when] the determinative issue involves either medical etiology or a medical diagnosis.'" *Davidson*, 581 F.3d at 1316 (quoting *Jandreau*, 492 F.3d at 1377). As a result, the Court concludes that the Board's categorical rejection and failure to analyze and weigh the

8

appellant's lay evidence in accordance with established precedent renders its statement of reasons or bases inadequate. *See* 38 U.S.C. § 7104(d)(1); *Allday*, *Caluza*, and *Gilbert*, all *supra.*

### B. December 2008 and March 2009 VA Medical Examinations

The Secretary's duty to assist includes "providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim." 38 U.S.C. § 5103A(d)(1); *see also Green v. Derwinski*, 1 Vet.App. 121, 124 (1991). This Court has held that a medical opinion is adequate "where it is based on consideration of the veteran's prior medical history and examinations and also describes the disability, if any, in sufficient detail so that the Board's 'evaluation of the claimed disability will be a fully informed one.'" *Stefl v. Nicholson*, 21 Vet.App. 120, 123 (2007) (quoting *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994)).

In evaluating disability claims, the Board is obliged to reject insufficiently detailed medical reports. 38 C.F.R. § 4.2 (2010) ("If a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes."). The appellant does not dispute VA's authority to request the December 2008 VA examiner to clarify her opinion. Instead, the appellant argues that the statement "[n]o right knee injury in service" (R. at 54) made by VA to the examiner in its request for a revised report infringed upon VA's responsibility to observe the basic tenets of fair play while gathering evidence. Appellant's Br. at 11. The appellant's argument relies on precedent set in *Austin v. Brown*, 6 Vet.App. 547, 552 (1994), and a related line of cases.

In *Austin*, the Board's request for a medical opinion contained a sentence stating: "Clearly, [the veteran's] in-service chest injury was not related to his fatal pulmonary emphysema." 6 Vet.App. at 549. The Court found that such a statement by the Board indicates that "there was no process at work to ensure impartiality, and creates the impression that the Board was not securing evidence to determine the correct outcome, but rather to support a predetermined outcome." *Id.* at 552. The Court held:

> A [Board] decision which relies upon a [Board] medical adviser's opinion obtained by a process that does not ensure an impartial opinion violates *Thurber* [*v. Brown*, 5 Vet.App. 119 (1993)]-type fair process. We hold that basic fair play requires that evidence be procured by the agency in an impartial, unbiased, and neutral manner. The process employed here cannot be sustained as fair.

9

*Id*.; *see also Bielby v. Brown*, 7 Vet.App. 260, 268 (1994) (holding that VA must pose a hypothetical question to an independent medical expert that "may not suggest an answer or limit the field of inquiry of the expert," and reliance on an independent medical opinion where the Board constrained the scope of inquiry is improper because such constraints resulted in "limiting [the examiner's] investigation and tainting the results"); *Colayong v. West*, 12 Vet.App. 524, 535 (1999) (holding that VA erred because the nature of its questions suggested an answer and impermissibly narrowed the examiner's field of inquiry).

The Secretary attempts to distinguish *Austin*. Secretary's Br. at 15. He argues that, in *Austin*, the Board "provided the answer to the examiner in advance of the examination," whereas in this case, the Agency asked for a new opinion for a number of reasons, and thus the "[A]gency was not soliciting a particular result, but pointing to the insufficiencies in the 2008 opinion." *Id.* at 15-16. The Court is not convinced. Despite the other reasons given to the examiner for a new opinion, the request in this case was unequivocal in stating that there was "[n]o right knee injury in service."[6] R. at 54. This statement makes the matter at hand much like *Austin*, where VA made an explicit statement of fact to an examiner that spoke to the crux of the examiner's opinion and of the case in general.[7] The Court also notes that at the time of the second examination request, there was no adverse credibility determination concerning the appellant's lay assertions that he injured his right knee in service. *Contra Reonal v. Brown,* 5 Vet.App. 458, 461 (1993) (holding that a medical opinion based upon the appellant's account of his medical history and service background was of no probative value where the recitations by the appellant *had already been rejected* by the 1954 regional office decision). The statement in this case directly contradicted the findings of the VA examiner in her initial December 2008 opinion that the appellant injured his right knee in service. R. at 73.

---

[6] The Court notes that this statement by VA in the examination request was given even though there is an SMR dated May 16, 1978, that appears to refer to an effusion of the right knee cap with increased pain upon palpation of the meniscus regions and a limited range of motion. R. at 634.

[7] We express no opinion now as to the circumstances under which it would be appropriate for the Board to inform an examiner that a fact must be accepted as true. Such an opinion would depend on the evidence (or medical evidence) presented in a particular case. Here, the statement by the Board that there was no right knee injury in service was not supported by the record (*see supra* note 6) and spoke to a crucial fact at issue for which a medical opinion was required.

10

The examiner subsequently reached the opposite conclusion in her March 2009 opinion – that the appellant's right knee injury was not related to service. R. at 42. The Court is left unsure whether the examiner revised her opinion based on additional evidence she reviewed or because she felt coerced by the Agency's proclamation against her earlier conclusion. Therefore, the Court finds the request violated the Board's duty to procure evidence in an "impartial, unbiased, and neutral manner." *Austin*, 6 Vet.App. at 552; *see also Bielby* and *Colayong*, both *supra*.

The Secretary further argues that since the SMRs show no right knee injury during service, "there was no bias or impartiality in the addendum request." Secretary's Br. at 16. The Court does not agree. As noted above, there appears to be one notation in the SMRs as to a right knee injury. R. at 634. In any event, the lack of medical evidence in service does not constitute substantive negative evidence. *McLendon v. Nicholson*, 20 Vet.App. 79, 85 (2006). The examiner could have potentially determined, based on other evidence of record including lay statements and private medical opinions, that, regardless of the lack of documentation in the appellant's SMRs, the appellant injured his right knee in service. The statement in the request that there was no right knee injury in service indicated to the examiner that all of the evidence had already been analyzed and a conclusion reached, and thus impeded her impartiality. On remand, the Board should procure an impartial medical opinion on which to base its decision. In procuring an opinion, the Board is not precluded from asking the physician (1) whether there is any medical reason to accept or reject the proposition that had the appellant had a right knee injury in service, such injury could have lead to his current condition; (2) what types of symptoms would have been caused by the type of ACL injury at issue; and (3) whether a right knee injury as described in the SMRs (R. at 634) could have been mistaken for a sprain but was a precursor to the current condition.

Given this disposition, the Court will not, at this time, address the other arguments and issues raised by the appellant. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order) (holding that "[a] narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at the readjudication, and, of course, before this Court in an appeal, should the Board rule against him"). On remand, the appellant is free to submit additional evidence and argument on the remanded matters, and the Board is required to consider any such relevant evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating that, on remand, the Board

11

must consider additional evidence and argument in assessing entitlement to benefit sought); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court has held that "[a] remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). The Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112 (requiring Secretary to provide for "expeditious treatment" of claims remanded by the Court).

## III. CONCLUSION

After consideration of the appellant's and Secretary's pleadings, and a review of the record, the portion of the Board's August 10, 2009, decision denying the appellant service connection for a right knee disability is VACATED and the matter is REMANDED to the Board for further proceedings consistent with this decision.

LANCE, *Judge*, concurring: Although I agree with the result reached by my colleagues, I am compelled to write separately because the issues involved arise so frequently as to justify additional clarification. First, issues of witness credibility and competence are among the most common raised to us and the distinctions between various cases are often misunderstood or overlooked. Second, the proper relationship between the Board and VA medical experts is also an area beset with confusion. This case presents an ideal fact pattern to do more than simply state what the Board did wrong. Accordingly, I must address in greater detail how the Board should approach these issues so that it may clearly articulate its analysis on these issues in the future.

## I. THE RELATIONSHIP BETWEEN COMPETENCE AND CREDIBILITY

The first common issue that this case demonstrates is the often blurred line between competence and credibility in the assignment of weight to lay testimony.

### 1. Lay Competence

In general, neither lay witnesses nor members of the Board are medical experts. Thus, the beliefs of lay witnesses (including claimants) on issues of diagnosis and medical causation are not competent evidence in situations where those issues require medical expertise to resolve. *Compare*

*Jandreau v. Nicholson*, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) (noting that a layperson is not "competent" to diagnose a form of cancer), *with Barr v. Nicholson*, 21 Vet.App. 303, 309 (2007) (holding that a layperson is competent to diagnose vericose veins). Similarly, in *Colvin v. Derwinski*, the Court held that the Board "must consider only independent medical evidence to support [its] findings rather than provide [its] own medical judgment in the guise of a Board opinion." 1 Vet.App. at 171, 175 (1991); *see also Maxson v. Gober*, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (holding that the Board is competent to consider "evidence of a prolonged period without medical complaint, along with other factors" in determining that a condition was not aggravated by service). The question of whether a particular medical issue is beyond the competence of a layperson — including both claimants and Board members — must be determined on a case-by-case basis. *Jandreau*, 492 F.3d at 1377. Simply put, any given medical issue is either simple enough to be within the realm of common knowledge for lay claimants and adjudicators or complex enough to require an expert opinion.

However, I would reiterate that even if a layperson is not competent to diagnose or determine the cause of a particular condition, lay evidence is still competent to establish the occurrence of observable events and medical symptoms. *Davidson v. Shinseki*, 581 F.3d 1313, 1316 (Fed. Cir. 2009). Accordingly, the Board should avoid overbroad statements about the competence of laypersons and should carefully distinguish its treatment of lay testimony of symptoms and its analysis of lay competence on issues of diagnosis or causation. Board decisions that make blanket statements about lay competence while failing to acknowledge and discuss the competent lay testimony of observable symptoms will face a rocky road on appeal.

More importantly, even if the Board acts properly in denying a claim, it must clearly communicate the basis of the denial so that the claimant and future regional office adjudicators will understand what types of evidence must be submitted in order to reopen the claim. *See Kent v. Nicholson*, 20 Vet.App. 1, 9-11 (2006). Simply denying the claim with a terse sentence that the lay evidence is not competent to establish the nature or origin of the claimant's disability will often leave it unclear whether the Board is accepting the claimant's account of what happened in service or what post service symptomatology was observed. In such cases, a remand will often serve to illuminate the basis of the decision not only to inform the claimant and the Court, but to ensure that

a future attempt to reopen the claim can be properly adjudicated.

## 2. Credibility

Even where there are no competence issues, the value of medical evidence and opinions will frequently turn on the credibility of lay testimony. A medical opinion based upon an incorrect factual premise is of no probative value.[8] *See Reonal v. Brown*, 5 Vet.App. 458, 461 (1993). Thus, the Board, in its role as factfinder, "is obligated to, and fully justified in, determining whether lay evidence is credible in and of itself." *Buchanan v. Nicholson*, 451 F.3d 1331, 1337 (Fed. Cir. 2006).

In determining whether lay evidence is credible, the Board must frequently consider whether there is corroborating evidence that supports the witness's account or suggests that the witness may be untruthful or mistaken. In doing so, the Board must distinguish between two distinct situations. In some cases, there is a complete absence of any evidence to corroborate or contradict the testimony, while in other cases there is evidence that is relevant either because it speaks directly to the issue or allows a reasonable inference to be drawn by the Board as factfinder.

In general, the Board cannot determine that a veteran's lay evidence lacks credibility solely because it is not corroborated by contemporaneous medical records. *Buchanan*, 451 F.3d at 1336. In cases involving disabilities related to combat, VA must presume lay evidence that describes the in-service disease or injury is credible so long as it is "consistent with the circumstance, conditions, or hardships of such service, notwithstanding the fact that there is no official record." 38 U.S.C. § 1154(b). This presumption is rebuttable only by clear and convincing evidence. *Collette v. Brown*, 82 F.3d 389, 393 (Fed. Cir. 1996). However, "the lack of contemporaneous medical records may be a fact that the Board can consider and weigh against a veteran's lay evidence," when such consideration is not prohibited by 38 U.S.C. § 1154(b). *Buchanan*, 451 F.3d at 1336.

---

[8] I would note that an opinion based upon an *incorrect* factual premise is not the same as an opinion based upon an *incomplete* factual premise. The Board may assign a lesser evidentiary value to an opinion that is lacking in detail. *Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 302 (2008). However, the Board may not assume that additional information would necessarily change an expert's opinion unless the issue falls within the competence of a layperson. Thus, an opinion that lacks details may trigger the duty to assist by indicating that a condition may be related to service, *McLendon v. Nicholson*, 20 Vet.App. 79, 83-84 (2006), and may lend some evidentiary support to other opinions — favorable or unfavorable to the claim — that reach the same conclusion. *Nieves-Rodriguez*, *supra.*

There is a wide variety of evidence that may corroborate or contradict a lay witness's testimony, including prior consistent statements of the witness, prior inconsistent statements of the witness, and current medical evidence, such as an x-ray showing the veteran has a healed fracture in the allegedly injured area. Of course, this list is by no means exclusive. *Cf. Stefl v. Nicholson*, 21 Vet.App. 120, 124 (2007) (providing a nonexclusive list of factors a physician may discuss to support an opinion).

One type of evidence that often causes confusion is contemporaneous SMRs that do not record the alleged in-service disease or injury. As discussed above, in cases involving combat, VA is prohibited from drawing an inference from silence in the SMRs. However, in cases where the inference is not prohibited, the Board may use silence in the SMRs as contradictory evidence only if the alleged injury, disease, or related symptoms would ordinarily have been recorded in the SMRs. *See Buczynski v. Shinseki*, 24 Vet.App. 221, 225-26 (2011) (noting that the Board could not rely on silence in medical records to conclude that the appellant's injury was not "exceptionally repugnant" because there was no medical reason for the examiner to address that subjective conclusion); FED. R. EVID. 803(7) (the absence of an entry in a record may be evidence against the existence of a fact *if* such a fact would ordinarily be recorded).

In order to rely on this inference, the Board must make two findings. First, the Board must find that the SMRs appear to be complete, at least in relevant part. If the SMRs are not complete in relevant part, then silence in the SMRs is merely the absence of evidence and not substantive negative evidence. *See McLendon*, 20 Vet.App. at 85. If the SMRs are complete in relevant part, then the Board must find that injury, disease, or related symptoms would ordinarily have been recorded had they occurred. In making this determination, the Board may be required to consider the limits of its own competence on medical issues. For example, the Board may reasonably conclude that a compound fracture of a bone would have been observed and recorded, but would require medical evidence to determine whether a particular type of cancer would have manifested observable symptoms in service that likely would have been reported and recorded. *Cf. Jandreau*, 492 F.3d at 1377 n.4 (noting that a layperson is competent to identify a broken leg, but not a form of cancer).

15

## 3. *Application*

In this case, the Board rejected the appellant's lay statements based both on competence and credibility. The Board determined that the nature and origin of the appellant's knee injury were medical issues beyond his competence. R. at 16. As to credibility, the Board stated:

> Given that a right ACL tear is quite a significant injury, one would expect to see at least some documentation of it in the [SMRs]. Also, one would expect that the [appellant] would have mentioned this right knee injury on his report of medical history at separation[,] but instead this document shows only that the [appellant] reported two separate injuries to the left knee. In addition[,] the Board notes that when the [appellant] initially filed his claim, he did not allege a right knee injury in service. Instead he alleged only that he incurred a left knee injury and that his right knee disability was secondary to that injury. The [appellant] then made similar contentions in his Notice of Disagreement. For all of these reasons, the Board does not find his more recent assertions of right knee injury in service credible.

R. at 15.

The flaw in the in Board's analysis is apparent. Although it concluded that the appellant was not competent as a layperson to provide a medical opinion as to his ACL injury, the Board relied upon its own lay opinion about the nature of the ACL injury to determine that it was a "significant injury" that would have been documented in the SMRs. The Board cannot have it both ways. Either this type of injury is relatively simple and within the common knowledge of a layperson or it is complex enough that expert opinion or treatise evidence is required to understand its origins, progression, and symptoms.

Based upon the development of the record so far, the ACL injury here appears to fall clearly on the side of being medically complex. The record is devoid of any medical evidence establishing the common symptomatology and usual treatment of an ACL injury. The record does contain a May 16, 1978, clinical record, which reported "effusion sighted r[ight] patella" and increased pain on palpation and on leg lift of the medial and lateral meniscus regions and a limited range of motion. R. at 634. It also contains the appellant's testimony that he was seen at a clinic for a right knee injury during service and was told that he had sustained only a sprain. R. at 58. It is not apparent whether the clinical record can be evidence of an ACL injury in service or whether such an injury might have been misdiagnosed as a sprain. It is also not clear whether the appellant's symptoms in service would have been of such severity that he would have likely reported them during his separation

16

examination, particularly if they had been inaccurately attributed to a sprain instead of a more severe ACL injury. Therefore, I agree with the appellant's argument that the Board violated the Court's holding in *Colvin*, *supra*, in finding that some documentation in his SMRs is expected as the Board is not competent to make this determination based solely on its own medical beliefs.

## II. THE RELATIONSHIP BETWEEN THE BOARD AND VA MEDICAL EXPERTS

The second common issue that this case presents is the delicate balance between the Board's primacy as a factfinder and its obligation to seek expert assistance in resolving complex medical issues when appropriate.

In evaluating disability claims, the Board is obliged to reject insufficiently detailed medical reports. 38 C.F.R. § 4.2 (2010) ("If a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes."). A medical opinion is adequate "where it is based on consideration of the veteran's prior medical history and examinations and also describes the disability, if any, in sufficient detail so that the Board's 'evaluation of the claimed disability will be a fully informed one.'" *Stefl*, 21 Vet.App. at 123 (quoting *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994)). It necessarily follows that the Board has an obligation to reject medical opinions that are based upon an inaccurate factual premise. *See Reonal*, *supra*.

Although the basic requirement to obtain a detailed medical opinion based upon an accurate factual premise is straightforward in principle, this case demonstrates the types of chicken-or-egg problems that frequently arise in a system where adjudicators and experts do not converse directly. I agree with my colleagues that the request for a medical opinion in this case violated *Austin*. The request in this case was unequivocal in stating that there was no right knee injury during service. This statement makes the case at hand much like *Austin*, where VA made an explicit statement of fact to an examiner that a reasonable physician would likely understand as a necessary premise of the opinion being requested. As noted by the majority's opinion, the statement directly contradicted the findings of the VA examiner in her initial December 2008 opinion and in the subsequent March 2009 opinion, the examiner found that the appellant's right knee injury was not related to service. R. at 49. In particular, her conclusion focused on whether the appellant's ACL injury was secondary

to his left knee condition and concluded that it was not related because it was a traumatic injury and not an overuse injury. *Id.* The opinion does not address whether a traumatic injury to the right knee occurred and the reader is left unsure whether the examiner revised her opinion based on additional evidence she reviewed or because she felt bound by the Board's apparent finding against her earlier conclusion. Therefore, regardless of the intent of the request, the Board's categorical statement must be read as limiting the scope of the medical opinion, which had the result of violating *Austin* under the facts of this case.

In this case, the opinion should have asked the physician whether there was any medical reason to accept or reject the proposition that the appellant had a right knee ACL injury that could have lead to his current condition. *Cf. Daves v. Nicholson*, 21 Vet.App. 46, 51-52 (2007) (where an examiner states that additional information may help resolve a disputed medical issue, the Secretary's duty to assist requires the Secretary to determine whether that information can be reasonably obtained). The opinion could have specifically asked what types of symptoms would have been caused by the type of ACL injury at issue and whether such an injury could have been mistaken for a sprain or otherwise gone undiagnosed during service. Had it done so, perhaps this remand could have been avoided.

Nonetheless, I think it is vital to stress that in many cases it is perfectly appropriate for a request for a medical opinion to define the facts that a medical examiner must accept are true. Factfinding is a responsibility that is ultimately committed to the Board and not the VA medical examiner. *See Washington v. Nicholson*, 19 Vet.App. 362, 367-68 (2005) (it is Board's duty to determine probative weight of evidence). As mentioned earlier, where the duty to provide a medical opinion applies, the Board must obtain an opinion that is based upon the factual predicate that it finds to be true. In some cases, a medical opinion may help resolve certain kinds of disputed issues of fact, such as whether a particular injury occurred in service or the precise nature of an intervening injury after service. As a result, in many cases, it may make sense for the Board to make specific findings before remanding a matter and require a medical opinion to accept those findings as true. In other cases, it is better for the Board to note that it needs to resolve a component factual question and then to ask the physician to include in the report an opinion as to whether there is any medical reason to accept or reject the veteran's testimony as to what occurred in the past. When the Board

seeks such an opinion, the examiner should explicitly address the issue, even if only to state that there is no medical evidence that either supports or contradicts the lay testimony. *Cf. Jones v. Shinseki*, 23 Vet.App. 382, 390-91 (2010) (concluding that a medical examiner may report that an issue of medical causation cannot be resolved without resorting to speculation if that conclusion is adequately explained).

Unfortunately, it is not always easy at the outset of a claim to identify all potential theories of entitlement that have been raised or all the facts that must be determined to adequately resolve each theory. Unlike a courtroom setting where a skilled advocate can respond to an expert's testimony and methodically work through all the issues that arise, VA's system for obtaining expert medical opinions through regional offices by written request means that developing evidence in a complex case can be a piecemeal process. *See Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1346-68 (Fed. Cir. 2003) (invalidating VA's proposal to allow the Board to develop new evidence because it would violate claimant's right to one review on appeal). In many complex cases, the understanding of both the medical expert and the Board will evolve through multiple cycles of requests and opinions, which may or may not be accompanied by additional development of other evidence. However, I would note that the number of iterations required to cover all the issues can be substantially reduced if adjudicators are explicit as to whether any underlying facts are in dispute at any given point and if medical experts are explicit in stating how and why they are resolving any disputes as to the underlying facts. Although this may take extra effort initially, in the long run it will reduce the burden of avoidable remands that VA too frequently inflicts upon itself and provide faster, clearer decisions to claimants that have too often been waiting for many years for resolution of their claims.