# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 00-0418

Dennis A. Svehla, Appellant,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued November 14, 2002          Decided    June 25, 2003 )

*Daniel G. Krasnegor*, with whom *Christopher A. Glaser* was on the brief, both of Washington, D.C., for the appellant.

*Kenneth A. Walsh*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Brian B. Rippel*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before FARLEY, STEINBERG, and GREENE, *Judges*.

GREENE, *Judge*, filed the opinion of the Court.  STEINBERG, *Judge*, filed a concurring opinion.

GREENE, *Judge*:  The veteran, Dennis A. Svehla, appeals, through counsel, a December 30, 1999, decision of the Board of Veterans' Appeals (Board) that denied an effective date earlier than November 1, 1995, for the payment of his Department of Veterans Affairs (VA) disability compensation benefits.  Record (R.) at 8.  Mr. Svehla asserts that the Board erred by concluding that he had been notified, in 1968, that payment of his VA compensation would not commence until he elected compensation or waived his military retired pay.  Appellant's (App.) Supplemental (Suppl.) Brief (Br.) at 4, 10-11.  He argues that the Court should reverse the Board decision and direct that the proper effective date for the payment of his VA compensation benefits was the first day that  he no longer received Temporary Disability Retirement List (TDRL) benefits.  Alternatively, he argues

that the Board decision should be vacated and the matter remanded on the basis that the Board's discussion lacks an adequate statement of reasons or bases. *Id.* at 4. This appeal is timely, and the Court has jurisdiction under 38 U.S.C. §§ 7252(a) and 7266. The Court agrees that there was error and will therefore reverse and remand.

## I. FACTS

The facts are not in dispute. Mr. Svehla served on active duty in the U.S. Marine Corps from December 1964 to July 1967. R. at 3, 28. In December 1966, after a criminal proceeding in the United States District Court for the District of Columbia, he was found not guilty by reason of insanity, but also was ordered admitted to St. Elizabeths Hospital in Washington, D.C., for psychiatric observation and treatment. R. at 22. On August 1, 1967, the U.S. Marine Corps placed him on the TDRL and awarded him a disability rating of 30%; this rating was increased to 100% on December 28, 1967. R. at 34. (Although the exact date on when Mr. Svehla's TDRL status ended is unclear from the record, it appears that it ended in 1969. *See* R. at 117.)

In October 1967, Sol Rosen, Esq., on behalf of Mr. Svehla, filed with a VA regional office (RO) an application for compensation for service connection for "Mental Illness – Schizophrenic Reaction, Chronic Undifferentiated Type." R. at 13. Accompanying the application was a cover letter, written on Mr. Rosen's professional letterhead, which stated as follows: "I am enclosing herewith the claim for disability benefits from the V.A. for my client Dennis Svehla, who is incarcerated in St. Elizabeth's [sic] Hospital. I would appreciate it greatly if you would advise me of the future processing of his claim for benefits." *Id.* An RO letter, dated later in October 1967, to Mr. Svehla, was addressed "c/o Sol Z. Rosen." R. at 20.

In July 1968, the RO granted Mr. Svehla service connection for, inter alia, schizophrenic reaction, chronic, undifferentiated type, rated as 100% disabling. R. at 28-29. On July 26, 1968, the RO issued, on a form entitled "Disallowance Disability or Death Claim" (VA Form 21-523), a statement that Mr. Svehla's benefits were being "disallowed," noting the following reason: "Veteran on Active Duty or in Receipt of Retired Pay." Suppl. R. at 55. The form also contained a mark next to a box designated "Notice to a Retired Veteran of His Right of Election to Receive Disability Compensation." *Id.* There is nothing in the record to indicate that this form was sent to either Mr.

2

Svehla or Mr. Rosen.  However, on August 1, 1968, a letter from the RO was sent to Mr. Svehla, addressed "C/O St. Elizabeths Hospital", stating as follows: "Your claim for compensation has been carefully considered on the basis of all the evidence, including reports received from the Service Department.  The evidence establishes that [y]our nervous disorder, incurred in peacetime and Vietnam era[,] is 100% disabling from 8-1-67."  R. at 32.  The letter indicated that enclosed was a copy of VA Form 21-651 (Election of Compensation in Lieu of Retired Pay or Waiver of Retired Pay to Secure Compensation from Department of Veterans Affairs), but the record does not include a copy of that form.  *See* R. at 32.  Neither this letter nor any other letter in the Record on Appeal (ROA) mentions or refers to the July 26, 1968, "disallowance" form (that is, the VA Form 21-523).  *See* R. at 20-40; Suppl. R. at 1-15.  However, after receiving a medical report from Dr. Elizabeth R. Strawinsky, a physician at St. Elizabeths Hospital (R. at 37), the RO sent Mr. Svehla a September 10, 1968, letter, stating as follows:

> The evidence does not warrant any change in the previous determination.  The above cited report shows continued improvement in your service-connected condition.  Your evaluation as 100% disabl[ed] is continued.  If you wish to receive compensation, you should complete Section I of the [VA Form] 21-651 sent to you on August 1, 1968[,] and return it to this office.

R. at 40.  Nothing in the ROA reveals that any further action was taken on this matter between 1968 and 1995.

In October 1995, Mr. Svehla contacted VA and asked about the status of his benefits.  R. at 42.  After receiving a reply from the RO, he filed, on December 26, 1995, a VA Form 21-651.  R. at 54.  In February 1996, the RO informed Mr. Svehla that VA would begin paying his disability compensation benefits effective February 1, 1996.  R. at 57.  In April 1996, Mr. Svehla wrote to the RO protesting the nonpayment of compensation from November 1995 to February 1996, and inquiring about his entitlement to these benefits since the date of his original application for compensation in 1967.  R. at 62.  The RO issued a decision in which it concluded that November 1, 1995, was the appropriate effective date for his benefits because that was the date that VA considered his "disallowed" claim was reopened.  R. at 65.

In June 1997, Mr. Svehla filed a Notice of Disagreement (NOD) as to the RO decision.  R. at 86.  He asserted: "I feel that since I was rated 100% at the original time, for psychiatric reason, I did

3

not understand. I never received your original letters sent to me at St. Elizabeth's [sic] Hospital, in Washington, D.C., which was a psychiatric facility." *Id.* At a later hearing before the Board, Mr. Svehla testified under oath that, until after February 1996, he had been unaware of the date of his award of service connection for his mental disability, and again complained that he had never received copies of the August and September 1968 RO decision letters. R. at 116-17.

On December 30, 1999, the Board denied an effective date earlier than November 1, 1995. R. at 3. Relying on *Jones (Raymond) v. West*, 12 Vet.App. 98, 101-02 (1998), the Board found that the presumption of regularity attached to the RO's mailing of the August and September 1968 decision letters, and that that presumption was not rebutted although the letters to Mr. Svehla contained an incomplete address (the full and correct address had been included in Mr. Svehla's application for benefits). R. at 4-5. Concerning Mr. Svehla's other arguments, the Board determined:

> According to testimony presented at hearing, the veteran has not received retirement pay since 1968. Therefore, at the time he filed his October 1995 claim, he was not required to submit an election to receive VA compensation and the exception noted in 38 U.S.C.[] § 3.400(j) was inapplicable.
>
> . . . .
>
> . . . Inasmuch as the evidence establishes that the veteran did not submit a claim prior to October 1, 1995, or an election to receive VA compensation between August 1968 and January 1996, the Board finds that the requirements for entitlement to an effective date prior to November 1, 1995, for payments of VA compensation have not been met. The veteran's claim must therefore be denied.

R. at 7. Mr. Svehla then appealed to this Court.


## II. ANALYSIS

In 1968, VA regulations provided that a veteran "entitled to [military] retirement pay as well as [VA] pension or compensation may elect which of the benefits he desires to receive," but may not receive both concurrently. 38 C.F.R. § 3.750(a), (b) (1967). This regulation continues to exist and remains unchanged in substance today. 38 C.F.R. § 3.750(a), (b) (2002). The issue presented by this appeal is whether the appellant received adequate notice of his right of election.

Mr. Svehla argues that the Board's reliance on the presumption of regularity to establish that notice concerning his right of election under § 3.750(b) was provided is erroneous because the Board did not recognize that the RO had failed to provide his attorney, Sol Z. Rosen, with notice and copies of the 1968 RO decisions. Suppl. Br. at 11. The Secretary responds that under the then-applicable VA regulations, 38 C.F.R. §§ 19.130 ("attorneys or agents admitted to practice before Veterans Administration") and 19.131 ("other persons as representative") (1967), VA required attorneys to provide a written declaration containing certain specific information before they would be considered as a veteran's representative, and therefore remand is not required. Secretary's (Sec'y) Suppl. Br. at 13. The Secretary's argument misses the mark.

Mr. Svehla's initial claim for VA benefits was filed by Mr. Rosen (R. at 13-18) who unequivocally on his professional letterhead identified Mr. Svehla as his client ("I am enclosing herewith the claim for disability benefits from the V.A. *for my client Dennis Svehla . . .*") and who specifically requested that VA "advise [him] of the future processing of [Mr. Svehla's] claim for benefits." R. at 13 (emphasis added). The RO complied with Mr. Rosen's request by sending an October 1967 letter to the claimant "c/o Sol Z. Rosen." R. at 20. Mr. Svehla has not, at any stage of this case, ever claimed that Mr. Rosen was not acting as his representative when his disability compensation claim was before the RO, or at any other time, for that matter.

At the time VA received Mr. Svehla's claim, VA regulation 38 C.F.R. § 1.524 (1967) provided in pertinent part: "A duly authorized representative will be any person authorized in writing by the claimant to act for him, or his legally constituted fiduciary, if the claimant is incompetent." *Cf.* 38 C.F.R. § 3.155 (1967) ("Any communication or action, indicating an intent to apply for one or more benefits under the laws administered by the Veterans Administration, from a claimant, *his duly authorized representative*, a Member of Congress, or some person acting as next friend of a claimant who is not sui juris may be considered an informal claim" (emphasis added)). Section 1.524 would apply in Mr. Svehla's case if there were (1) written authorization allowing Mr. Rosen to "act for" Mr. Svehla, or (2) a finding that Mr. Svehla was incompetent at the time, and that Mr. Rosen was his fiduciary. Although there is neither a copy of any such authorization nor any evidence in the file to show a finding by VA that Mr. Svehla was incompetent, on the record before the Court Mr. Rosen clearly claimed to represent Mr. Svehla. Furthermore, the RO, by sending a

letter to Mr. Rosen as he had requested VA to do when he filed Mr. Svehla's claim (R. at 20), clearly recognized Mr. Rosen as his "duly authorized representative."

The Secretary, in support of his contention that VA never recognized Mr. Rosen as Mr. Svehla's representative in this case, cites to regulations such as those in Part 19 of title 38, Code of Federal Regulations, which, in addition to § 1.524, help VA to determine whether a veteran is represented. However, these regulations also serve to shield veterans from unauthorized people taking action in their names. It would be an odd result, to say the least, were the Court today to hold that an attorney such as Mr. Rosen was not the duly authorized representative when, as noted, he had filed with VA Mr. Svehla's claim, informed VA that Mr. Svehla was his client, and was recognized as Mr. Svehla's representative by VA, and when Mr. Svehla has never contested his representation. Absent specific legal authority and detailed procedural compliance and advance explanation, these regulations are not intended to be and should not be used as a sword against veterans to divest them of legitimate representation.

Moreover, if the RO had any question about whether Mr. Rosen was Mr. Svehla's representative, or if there were any doubt as to the viability of Mr. Rosen's representation of Mr. Svehla, it was the RO's obligation to seek to ensure the accuracy of such a determination, especially given Mr. Svehla's mental condition at that time. When the RO was sending notices to Mr. Svehla at St. Elizabeths Hospital, his diagnosed mental condition met the definitions in VA regulations for someone experiencing "[a]ctive psychotic manifestations" and "complete social and industrial inadaptability." 38 C.F.R. § 4.132 (1967). Also, the evidence of record revealed then and reveals now that in a November 16, 1967, letter to VA, Dr. Adler, a psychiatrist at St. Elizabeths Hospital, described Mr. Svehla's condition as follows:

> At the time of his admission to the Hospital[,] he displayed a noteworthy lack of affective depth and flexibility. Although he was not productive of ideation which could clearly be defined as psychotic, his childish and shallow attitude towards the offense of which he was accused definitely indicated severe impairment in judgment and insight. A full battery of psychological tests was administered to the patient, the results of which indicated that his reality testing is faulty to a degree which can be called psychotic. Because of the presence of marked autistic tendencies and an affect disturbance, it was the conclusion of the Hospital staff that the patient should be diagnosed as having a Schizophrenic Reaction, Chronic Undifferentiated Type. . . . Diagnosis:

6

Schizophrenic Reaction, Chronic Undifferentiated Type. Prognosis: Fair to poor.

R. at 22. The Secretary, therefore, was on notice of the severity of Mr. Svehla's mental disability.

Taking a veteran's specific disabilities into consideration when processing a veteran's claim is not a concept foreign to VA adjudications. *See, e.g.,* VA Manual M21-1, pt. III, ch. 11, para. 11.09 ("When corresponding with or processing the claim of a veteran with visual impairment evaluated as 70 percent or more disabling, . . . [the RO] will print the message 'VISUALLY IMPAIRED VSR NOTIFICATION REQ.' in the remarks section of the award print. The Public Contact Team will call the veteran to relate the letter's content."). The need for special caution in the adjudication of claims involving veterans who are rated 100% disabled for mental disorders is self-evident. Yet, neither the RO in the initial adjudications of this case nor the Board in the decision before us on review appear to have considered Mr. Svehla's mental condition despite the clear evidence of its seriousness. Indeed, neither the RO nor the Board noted that while Mr. Svehla was a patient at St. Elizabeths Hospital and during the time that VA was adjudicating his claim, there existed, and continues to exist today, a VA regulation applying *specifically* to individuals who are patients at that psychiatric facility:

> Benefits due or becoming due any person who is a patient at St. Elizabeths Hospital will be paid to a duly appointed fiduciary of such person. The benefits payable to a veteran who has no wife, child, or dependent parent will be paid by an institutional award in accordance with § 3.852 if there is no such fiduciary. Benefits payable to veterans' dependents who are patients at this hospital will be paid only to a fiduciary of such dependent, except that any awards now being paid to the superintendent will be continued while such dependent remains a patient.

38 C.F.R. § 3.851 (1967); *see also* 38 C.F.R. § 3.851 (2002). These protective procedures for dealing with claimants who have special problems, along with the Manual M21-1 provision cited above, stand in stark contrast to the provision of notice of election supposedly provided to Mr. Svehla under a "presumption of regularity." The special protections provided to patients at St. Elizabeths Hospital by § 3.851 should not be read in isolation, for to do so would create a dichotomy whereby a claimant suffering from a mental disorder would be entitled to no special procedures in

7

the adjudication of his or her claim but would become entitled to such procedure later in the proceedings when benefits are paid. There could be no acceptable rationale for such a distinction.

Thus, for these reasons and under the circumstances presented by this case, we hold that Mr. Rosen was Mr. Svehla's duly authorized representative when Mr. Rosen filed the claim for VA benefits on Mr. Svehla's behalf and specifically identified Mr. Svehla as "my client," and when Mr. Rosen was recognized as Mr. Svehla's representative by the RO in October 1967. Mr. Svehla was entitled to have Mr. Rosen, as Mr. Svehla's representative, receive copies of all correspondence concerning decisions on Mr. Svehla's claim, including notice of his right of election, or, at a minimum, to receive notice from VA that it was no longer recognizing Mr. Rosen as Mr. Svehla's representative and the reason or reasons why. *See* 38 C.F.R. §§ 1.524, 19.109 (1967); *see also* 38 C.F.R. § 3.851 (1967). Failure to provide such notice to his "duly authorized representative" vitiates the effectiveness of any notification sent to Mr. Svehla in this case. *See generally Austin v. Brown*, 6 Vet.App. 547, 551-52 (1994) (discussing "considerations of fair process"); *Thurber v. Brown*, 5 Vet.App. 119, 123 (1993) (noting "'underlying concepts of procedural regularity and basic fair play'" (quoting *Gonzales v. United States*, 348 U.S. 407, 411-12 (1955)). Accordingly, the Board erred in determining that Mr. Svehla received adequate notice of the decision concerning his VA benefits and his right of election of benefits under 38 C.F.R. § 3.750(a) and (b) and the consequences thereof.

Because of the Board's error, it did not have the opportunity to address 38 C.F.R. § 3.750(b), which provided: "In initial determinations, elections may be applied retroactively if the claimant was not advised of his right of election and the effect thereof." 38 C.F.R. § 3.750(b) (1967). (The current provision is the same.) Therefore, because Mr. Svehla was not "advised of his right of election and the effect thereof" pursuant to § 3.750(b), the Board's decision will be reversed and the matter remanded to provide the Board with the opportunity to determine whether Mr. Svehla's election should be "applied retroactively."

We caution, however, that in making this determination, we do not, indeed *cannot*, hold that the decision to *grant* VA benefits to Mr. Svehla, and the accompanying effective date of such award, is somehow a matter still pending due to insufficient notice. Mr. Svehla has not challenged that Board determination, and there is no indication that that determination was "adverse to the claimant"

8

under 38 U.S.C. § 7261(a)(4), as amended by the Veterans Benefits Act of 2002, Pub. L. No. 107-330, § 401, 116 Stat. 2820, 2832 (Dec. 6, 2002).

### III. CONCLUSION

Upon consideration of the foregoing analysis, the ROA, and the parties' pleadings, the Court reverses the December 30, 1999, Board decision and remands the matter to the Board with directions to determine whether Mr. Svehla's election should be "applied retroactively" and, if so, to determine both the proper date for the commencement of payments in this case and the proper amount of any past-due payments. In so doing, the Board should be mindful of the effect, if any, of the veteran's receipt of TDRL benefits at a rate of 30% (rather than 100%) during the first three months of his eligibility for VA disability compensation. R. at 29, 34.

REVERSED AND REMANDED.

STEINBERG, *Judge*, concurring: Although I join in the Court's opinion, I write separately to stress how far afield I find the Secretary's position to be in this case. Instead of taking into account (1) the question of Mr. Svehla's competency at the time of the initial decision on his claim, (2) that he had an attorney with whom VA did not maintain communication regarding the claim submitted by that attorney, and (3) that VA itself had a specific regulation, 38 C.F.R. § 3.851 (1967), establishing special procedures to govern payment of VA benefits to veteran inpatients at St. Elizabeths Hospital, VA chose to exalt technicality over fundamental fairness. By denying the veteran's claim for VA disability compensation, to which he was clearly entitled for some 26 years but for the lack of a simple written statement that he wished to waive receipt of his military retired pay after its apparent termination in 1969, the Secretary has adopted a position that is incompatible with both the nonadversarial nature of the VA adjudication system and VA's mission to serve and care for our nation's veterans. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994) (stating, in context of statutory interpretation, "interpretive doubt is to be resolved in the veteran's favor"); *Hodge v. West*, 115 F.3d 1356, 1362 (Fed. Cir. 1998) (stating that "[t]his court and the Supreme Court both have long recognized that the character of the veterans' benefits statutes is strongly and uniquely pro-claimant" and describing "the historically non-adversarial system of awarding benefits to veterans");

*Trilles v. West*, 13 Vet.App. 314, 326 (2000) (describing "the VA pro-claimant nonadversarial claims adjudication process"). What Circuit Judge Plager wrote recently in dissent applies equally to VA's posture in this case: "What I find most troubling is the insistence by the Government, represented before us by the Department of Justice, to define the Government's justice as a 'win' on any basis possible." *Schism v. United States*, 316 F.3d 1259, 1311 (Fed. Cir. 2002) (Plager, J., dissenting), *cert. denied*, __ U.S. __, No. 02-1226, 2003 WL 835021 (June 2, 2003).