# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-1189

REGINALD L. SMITH, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 24, 2019                                    Decided April 27, 2020)

*John Niles*, with whom *Amie P. Leonard* and *Barton F. Stichman* were on the brief, all of Washington, D.C., for the appellant.

*Joshua L. Wolinsky*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *James B. Cowden*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and ALLEN and FALVEY, *Judges*.

BARTLEY, *Chief Judge*: Veteran Reginald L. Smith appeals through counsel a November 14, 2017, Board of Veterans' Appeals (Board) decision denying service connection for a left shoulder condition. Record (R.) at 2-9. This appeal is timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of the Court to address the Board's November 2017 factual finding that Mr. Smith's lay testimony was not credible in light of the Board's assertions, in two prior remand decisions, that his testimony was credible, or at the very least statements that a reasonable person would believe constituted a positive credibility determination. The Court holds that the principles of fair process require the Board to provide claimants notice and an opportunity to respond when it purports to reverse prior assertions that evidence is credible or otherwise satisfactory to establish a fact necessary to the claim or when the Board's order would leave the impression that it had determined that the evidence was credible. Because the Board in this case did not notify Mr. Smith that it had materially changed its characterization of his credibility (or make clear that it had not made a credibility determination) or provide him an opportunity to respond, the Court will set aside the

November 2017 Board decision and remand the matter for additional development, if necessary, and readjudication consistent with this decision.

## I. FACTS

Mr. Smith served in the U.S. Navy from August 1988 to December 1994. R. at 2250. His service medical records (SMRs) include extensive documentation of a left knee injury, for which he was medically discharged, as well as the usual minor ailments such as upper respiratory infections; there is no documentation of a shoulder injury. *See* R. at 2253-2388; *see also* R. at 2250 (DD-214 documenting discharge due to disability and payment of disability severance pay).

In March 2002, Mr. Smith sought private medical treatment for low back pain. R. at 3185. At that time, he reported that "when he has a headache [he] notices [his] neck and shoulders hurt." *Id*. In September 2008, Mr. Smith sought VA treatment for left shoulder pain. R. at 1603-09. He reported that, over the past year, he had "noted persistent anterior and lateral [left] shoulder pain associated with repetitive motion." R. at 1604. He denied "trauma or specific injury" to the joint. *Id*. X-rays of the left shoulder were normal. R. at 1609. The suspected diagnosis was left "biceps and supraspinatus tendonitis." R. at 1607.

Later that same month, Mr. Smith filed a claim for VA disability benefits for, among other things, a left shoulder condition. R. at 3073-83. He asserted that the injury occurred in 1990 and that he received treatment while he was stationed aboard the U.S.S. *Sumpter*. R. at 3078. In a March 2009 decision, the VA regional office (RO) denied that claim. *See* R. at 2908-10. He initiated a timely appeal, R. at 2881, and a Statement of the Case (SOC) issued in May 2010, in which the RO explained that the claim remained denied because there was no evidence that a left shoulder condition occurred during service, manifested within the first year following separation from service, or was otherwise caused or aggravated by service. R. at 2855.

In his May 2010 Substantive Appeal, Mr. Smith explained that he injured himself while stationed on the *Sumpter* "when [he] was lowering a hatch by [himself]. It was too heavy and [he] lost control because of the weight of gravity and no one to assist [him]." R. at 2836. He stated that his SMRs "should show treatment" for a left shoulder injury. *Id*.

In February 2015, Mr. Smith testified before the Board that he "and another guy [were] lowering a hatch . . . and he dropped his side that he was lowering, and it stretched and pulled on the muscles in my shoulder and back on that side." R. at 2218. He further testified that x-rays

were taken during service, R. at 2220; that "they put [him] in a brace for a few weeks to a month or so," R. at 2218; that he periodically sought pain relief while deployed, R. at 2218-20; and that he continued to seek periodic treatment for his left shoulder during and after service, with VA treatment beginning in 1995 or 1996, R. at 2220-21.

In November 2015, the Board remanded the left shoulder claim for a medical opinion. R. at 1793-809. In the remand instructions, the Board directed the examiner to "[p]lease accept as true and [sic] the Veteran's credible lay statements regarding injuring his left shoulder in service while lowering a hatch, resulting in several weeks in a brace or sling and having intermittent shoulder pain ever since." R. at 1808.

Mr. Smith underwent the ordered VA examination in December 2015. R. at 1087-97. The examiner provided a negative linkage opinion based, at least in part, on the lack of documentation of a left shoulder injury in Mr. Smith's SMRs, as well as on the September 2008 VA treatment record documenting a one-year history of shoulder pain. R. at 1089. In a May 2016 Supplemental SOC (SSOC), the RO denied the claim based on a lack of documented left shoulder complaint or treatment during or within the first postservice year and the absence of any medical opinion linking his current left shoulder disability to service; Mr. Smith's credibility was not addressed. R. at 946-47.

In September 2016, the Board remanded the matter for a new medical opinion because, among other reasons, it was unclear whether the examiner had complied with the Board's instruction to accept as credible Mr. Smith's lay testimony regarding a left shoulder injury. R. at 872-73. The Board repeated the same instruction to the examiner as in November 2015, including the same typographical error to "accept as true and [sic] the Veteran's credible lay statements." R. at 874.

Mr. Smith's file was returned to the December 2015 VA examiner, who provided a supplemental opinion in November 2016. R. at 861-62. In that opinion, the examiner stated that Mr. Smith's account of the in-service injury was "deemed credible," (capitalization altered) but also noted there was no objective evidence of residuals within one year after separation. R. at 861. She further opined that the shoulder pain reported in March 2002 was "likely a radiating pain from his head/neck and not pain originating from his shoulder joint." R. at 862 (capitalization altered). In a March 2017 SSOC, the RO again denied the claims based on a lack of any "evidence of record"

linking the left shoulder disability to service; Mr. Smith's lay testimony and credibility were not addressed. R. at 855.

In the November 2017 Board decision on appeal, the Board determined that Mr. Smith's reports of an in-service injury, and continuity of symptoms since, were not credible because the alleged in-service treatment was not recorded in his SMRs, which included a medical board evaluation; because his reports of on-going symptoms were inconsistent with other medical evidence negative or silent for left shoulder symptoms before his September 2008 report that his left shoulder pain began in 2007; and because, if he had experienced long-term shoulder pain since service, it was likely that he would have included that condition in filings, years earlier, for knee and back disabilities. R. at 7-9. The Board explicitly stated that, even if the hatch event occurred, his report of chronic and recurring symptoms during and after service was not credible. R. at 7. The Board denied the claim based on its finding that the preponderance of the evidence "places the onset of [Mr. Smith's] current left shoulder disability to be around 2007," which it noted was over a decade after his separation from active service. R. at 9. This appeal followed.

## II. ANALYSIS

### A. Arguments

The dispute in this case arises from language used in the two prior Board remand decisions. Mr. Smith argues that, in the November 2015 and September 2016 remand decisions, the Board made favorable findings upon which he relied to his detriment. Appellant's Brief (Br.) at 11-17. Specifically, he contends that, in those remand decisions, the Board found that his lay statements regarding the nature of his shoulder injury, and his reports of chronic impairment and on-going medical treatment since, were credible. *Id*. at 11. He asserts that he relied on these favorable findings to his detriment because, believing that the question of his credibility was decided in his favor, he "did not develop evidence or submit argument to rehabilitate his testimony." *Id*. at 15 (citing R. at 712-14 (argument submitted by non-attorney then-representative that relied on the presumed credibility of Mr. Smith's lay testimony)). Moreover, he observes, "[b]y the time [he] was notified of [] VA's adverse credibility determination, he was foreclosed from responding with additional evidence or argument" because 38 U.S.C. § 7252 prohibits the Court from considering evidence not on the record before the Board. Appellant's Br. at 15. Mr. Smith asserts that he "was deprived of his right to due process when the Board rendered a final decision that reversed its prior,

favorable credibility determinations without allowing [him] an opportunity to respond." *Id.* at 14. In the alternative, he argues that he was denied fair process when the Board failed "to provide him with notice and an opportunity to respond before it sua sponte reevaluated what Mr. Smith reasonably believed to be two prior favorable credibility findings." Oral Argument at 3:33-3:49, *Smith v. Wilkie*, U.S. Vet. App. No. 18-1189 (oral argument held Oct. 24, 2019); *see also* Appellant's Br. at 16.

The Secretary challenges Mr. Smith's representation of the facts, arguing that the alleged favorable findings in the November 2015 and September 2016 remand instructions were only "for the purposes of development and instructions to an examiner and not an express Board finding of fact." Secretary's Br. at 8. He further asserts that the language used by the Board in 2015 and 2016 "merely directed that the examiners accept as true" Mr. Smith's lay testimony and did not find that Mr. Smith was credible. *Id.* at 11. Furthermore, he contends that, as a matter of law, "Board remands are interlocutory," R. at 9; therefore, no remand decision could include a binding factual finding because the Board is required to engage in de novo factfinding at the time of the final decision. *Id.* at 8-11 (citing 38 U.S.C. § 7104(a); 38 C.F.R. § 20.1100(b); *Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000); *Washington v. Nicholson*, 19 Vet.App. 362, 367-68 (2005); *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004); *Matthews v. Principi*, 15 Vet.App. 138 (2001) (per curiam order)). To the extent that Mr. Smith argues that he was denied notice and an opportunity to respond, the Secretary counters that "VA consistently informed [Mr. Smith] that he did not meet the criteria for service connection." Secretary's Br. at 21.

The parties' arguments address whether the Board violated Mr. Smith's due process rights, a Constitutional question, as well as whether he was denied fair process in the adjudication of his claim. Because the Court agrees with Mr. Smith that the Board violated his right to a fair process, it need not reach the Constitutional question of due process. *See Bucklinger v. Brown*, 5 Vet.App. 435, 441 (1993) ("It is '[a] fundamental and long-standing principle of judicial restraint . . . that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'" (quoting *Lyng v. Nw. Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 445 (1988))).

## B. Fair Process

The Board is obligated to ensure that it provides to appellants fair process in the adjudication of their claims. *See generally Thurber v. Brown*, 5 Vet.App. 119 (1993); *see also Bernard v. Brown*, 4 Vet.App. 384, 392-94 (1993) (holding that VA claimants must be provided

the "full benefits of . . . procedural safeguards" afforded by statutory and regulatory provisions establishing "extensive procedural requirements to ensure a claimant's rights to full and fair assistance and adjudication in the VA claims adjudication process"). When the Board develops or obtains evidence, including pursuant to a Board remand order, fair process requires the Board to "provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it, and a reasonable opportunity for the claimant to respond to it." *Thurber*, 5 Vet.App. at 126; *see also Young v. Shinseki*, 22 Vet.App. 461, 471-72 (2009); *Fugere v. Derwinski*, 1 Vet.App. 103, 108 (1990) ("'Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.'" (quoting *Morton v. Ruiz*, 415 U.S. 199, 235 (1974))).

Indeed, "[t]he entire thrust of the VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process." *Thurber*, 5 Vet.App. at 123; *see also Hodge v. West*, 155 F.3d 1356, 1363 ("[I]n the context of veterans' benefits where the system of awarding compensation is so uniquely pro-claimant, the importance of systemic fairness and the appearance of fairness carries great weight [which] . . . may depend on the veteran's ability to ensure the Board has all potentially relevant evidence before it."); *Austin v. Brown*, 6 Vet.App. 547, 551-52 (1994). Moreover, even in situations where no particular procedural process is required by statute or regulation, the principle of fair process may nonetheless require additional process if it is implicitly required when "'viewed against [the] underlying concepts of procedural regularity and basic fair play'" of the VA benefits adjudicatory system. *Thurber*, 5 Vet.App. at 123 (quoting *Gonzales v. United States*, 348 U.S. 407, 412 (1955)).

Our caselaw is clear that the principle of fair process applies throughout the process of evidentiary development. For example, it is well established that VA has an obligation to provide notice and an opportunity to respond when it develops new evidence after the last issuance of an SOC or SSOC. *Id.* Also, this Court has held that the Board fails to procure a medical opinion in "an impartial, unbiased, and neutral manner" when the opinion request contains a Board member's own negative linkage opinion or otherwise suggests that an examiner should reach a predetermined conclusion. *Austin*, 6 Vet.App. at 552; *see also Colayong v. West*, 12 Vet.App. 524, 534-35 (1999) (VA's instruction that an examiner was free to refute a positive linkage opinion compromised the fairness of the adjudication process). Additionally, this Court held that the Board "violated fair process" when it adjudicated an appellant's claim after agreeing to leave the record open for new

evidence but before setting and notifying him of a deadline for submitting that evidence. *Haney v. Nicholson*, 20 Vet.App. 301, 306 (2006). The Court also held that fair process required VA to notify a claimant's previously recognized representative when it purports to cease such recognition, *Svehla v. Principi*, 17 Vet.App. 160, 165 (2003), and to adhere to heightened notice requirements when adjudicating simultaneously contested claims, *Sapp v. Wilkie*, 32 Vet.App. 125, 138-39 (2019).

The question raised in the instant appeal is whether fair process requires notice and an opportunity to respond when the Board, in its role as de novo factfinder, purports to reverse its prior characterization, in non-final Board remand decisions, that evidence is credible or otherwise satisfactory to establish a fact necessary to establish entitlement to VA compensation benefits. The Court holds that it does.

### C. Concurrent Development and the Risk of Violating Fair Process

Concurrent development has long been a hallmark of VA's adjudication process, allowing it to simultaneously develop evidence as to the multiple requirements for entitlement to various benefits, such as VA service-connected disability compensation. *See* M21-1, III.iii.1.A.1.g ("When possible and in accordance with proper procedures, all necessary development actions should be completed concurrently, rather than piecemeal."). Concurrent development potentially saves time, a laudable and important goal, but it may also lead to confusion when one set of development actions requires the assumption of facts that have yet to be fully established, and that may or may not yet have been fully considered on the merits. Therefore, when conducting evidentiary development concurrently, fair process requires that VA not give claimants, who are, after all, lay persons unskilled in the nuances of the law, the impression that it has made factual determinations upon which they can rely. *See Hodge*, 155 F.3d at 1363; *Austin*, 6 Vet.App. at 551-52; *Thurber*, 5 Vet.App. at 126; *see also* 38 U.S.C. 5103 (claimants must be notified of the information and evidence necessary to substantiate a claim); *Daves v. Nicholson*, 21 Vet.App. 46, 52 (2007) ("Communication between VA and a claimant is a critical component of the adjudication process."). In other words, when VA's actions reasonably—but mistakenly—lead a claimant to conclude that a factual matter has been resolved favorably, the claimant has not properly received notification concerning the information or evidence necessary to substantiate the claim, lacks a meaningful opportunity to respond, and is denied fair process. That is what occurred in this case.

7

Here, the November 2017 Board decision denied Mr. Smith fair process because the remand language used in November 2015 and September 2016 lacked any qualifiers that would communicate to Mr. Smith that no decision had been made either way as to his credibility concerning the occurrence of an in-service injury, and no attempt was made thereafter to correct the unqualified assertion that his statements were credible. As noted above, in its November 2015 and September 2016 Board decisions, the Board instructed the examiners to "accept as true and [sic] the Veteran's credible lay statements regarding injuring his left shoulder in service while lowering a hatch, resulting in several weeks in a brace or sling and having intermittent shoulder pain ever since." R. at 874, 1808. It is true that Board remand decisions are neither final nor binding. 38 C.R.F. § 20.1100(b) (2019); *cf. Mathews v. McDonald*, 28 Vet.App, 309, 317 (2016) (holding that, because Board remands are not final decisions appealable to the Court, the Board must provide adequate reasons or bases for any unfavorable findings in a prior Board remand that is adopted in a subsequent Board decision). But because the Board's instructions stated that Mr. Smith's statements *were* credible, as opposed to requesting that the examiners *assume* credibility for the limited purpose of conducting the examinations and providing medical opinions, Mr. Smith was reasonably—but mistakenly—led to conclude that the Board had resolved the question of credibility in his favor. To the extent that the Board subsequently, on de novo review of the evidence, as required, *see* 38 U.S.C. § 7104(a); *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 419 F.3d 1317, 1319 (Fed. Cir. 2005) ("[T]he Board conducts de novo review of regional office proceedings based on the record."), found Mr. Smith's statements not credible, fair process required that Mr. Smith be given notice of that proposed factual finding and provided the opportunity to submit evidence concerning his credibility or to support the now-unestablished element of his claim, the alleged in-service injury.

The Court is not suggesting that the Board intended to mislead Mr. Smith. Nonetheless, the language used in the November 2015 and September 2016 remand decisions could reasonably lead Mr. Smith to believe that the credibility question was favorably settled, and he asserts that he relied on that mistake to his detriment. *See* Appellant's Br. at 15. *Compare* R. at 855 *and* 946-47 (Mar. 2017 and May 2016 SSOCs denying the claims but not addressing credibility), *with Williams v. Wilkie*, 32 Vet.App. 46, 58-59 (2019) finding no fair process violation when the veteran "had been notified on multiple occasions of the reasons for the denial of his claims" and had opportunity "to challenge those denials" but did not do so). Indeed, Mr. Smith's first postremand notice that

the credibility question was no longer favorably resolved was the November 2017 Board decision on appeal, at which point it was too late for him to respond with additional evidence supporting his credibility. *See* 38 U.S.C. § 7252(b); *McCullough v. Principi*, 15 Vet.App. 272, 273-74 (2001) ("The Court is precluded by statute from considering any material that was not contained in the 'record of proceedings before the Secretary and the Board.'" (quoting *Rogozinski v. Derwinski*, 1 Vet.App. 19, 20 (1992))).

The Board's November 2015 and September 2016 remand decisions stated that Mr. Smith's lay statements were credible. The Board's subsequent November 2017 decision on his credibility lacked fair process because Mr. Smith was not notified of this reversal or provided an opportunity to respond with argument or evidence. Because Mr. Smith asserts that he relied to his detriment on the Board's November 2015 and September 2016 representation of his testimony as credible, the Court concludes that he was prejudiced by this error. *See Daniels v. Brown*, 9 Vet.App 348, 353 (1996) (holding that the Court cannot conclude that an error was not prejudicial where "it is possible that the appellant would have sought and obtained additional medical opinions, evidence[,] or treatises" on the disputed question of fact). Consequently, remand is required. *See* 38 U.S.C. § 7261 (requiring the Court to "take due account of the rule of prejudicial error").

### D. Adequacy of VA Medical Opinions

For the sake of guidance to the Board on remand, *see Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009), the Court notes an additional issue that warrants attention. Mr. Smith asserts that the December 2015 and November 2016 medical opinions, provided by the same VA examiner, are inadequate. Appellant's Br. at 12-14. He notes that the Board questioned whether the VA examiner's December 2015 opinion considered his lay testimony regarding continuity of symptoms as credible, as directed in the November 2015 remand decision. *Id*. at 12. He contends that the November 2016 opinion is similarly flawed because the examiner "explicitly stated that her opinion" was based on the objective medical evidence, which did not document residuals within the first postservice year; therefore, she must not have contemplated as credible Mr. Smith's lay statements, including that he has had intermittent shoulder pain since service. *Id*. at 13. The Secretary disputes these contentions. Secretary's Br. at 16-19. The Court agrees with Mr. Smith.

In her December 2015 opinion, the VA examiner cited, as part of her rationale, the lack of documented disability in Mr. Smith's SMRs, but she did not address his lay statements regarding continuity of symptoms following in-service injury. R. at 1089. In her September 2016 opinion,

the examiner specified that her opinion was based on *objective* evidence and did not address the substance of Mr. Smith's lay statements. R. at 861-62. Moreover, even though she stated that Mr. Smith's lay statements were credible, she also, in the same sentence, noted that there was "no evidence of residuals within one year of separating [from] military service." R. at 861 (capitalization altered). She did not reconcile that statement with Mr. Smith's testimony of symptoms during and immediately following service. *See* R. at 2218-21.

Thus, contrary to the Board's express instructions, the medical examiner did not consider Mr. Smith's lay statements as true. Furthermore, because the Board twice remanded for a medical examiner to address the veteran's "credible lay statements," R. at 872-74, it appears that the Board needed this information to fairly decide the claim. The duty to assist requires that a medical examination be provided when it is "necessary to make a decision on the claim." 38 U.S.C. § 5103A(d)(1). And, in *Miller v. Wilkie*, ___ Vet.App. ___, No. 18-2796, 2020 WL 236755 at *7 (January 16, 2020), we recently held that this duty required that an examiner "address the veteran's lay statements to provide the Board with an adequate medical opinion," in part because "medical opinions can inform credibility findings." In this case, the duty to assist may require a medical examination that addresses whether the veteran's condition is consistent with his claimed shoulder injury. On remand, as it is developing the record regarding credibility, the Board should consider *Miller* and the duty to assist.

In accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order), Mr. Smith is free to submit any additional arguments and evidence on remand, including any additional arguments he made to this Court; the Board must consider any such evidence or argument submitted. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the [Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

## IV. CONCLUSION

Upon consideration of the foregoing, the November 14, 2017, Board decision is SET ASIDE, and the matter is REMANDED for further development, if necessary, and readjudication consistent with this decision.